**D. M. HICKMAN, Plaintiff,**

v.

**CITY OF DALLAS, Chief, Dallas Police Department, Defendants.**

**Civ. A. No. 3–79–0222–H.**

United States District Court,
N. D. Texas,
Dallas Division.

Aug. 24, 1979.

Kenneth H. Molberg, Dallas, Tex., for plaintiff.

Ronald E. Deutsch, Asst. City Atty., Dallas, Tex., for defendants.

MEMORANDUM OPINION

SANDERS, District Judge.

Plaintiff D. M. Hickman, a Dallas Police Officer, sues Defendants City of Dallas ("Dallas") and Chief, Dallas Police Department, to declare unconstitutional a provi-

sion of the Dallas City Charter, a Personnel Rule and Police Department regulation, which prohibit a City of Dallas employee from campaigning for or holding elected public office

(1) within Dallas County; or

(2) in another county within the state having contractual relations with the City, direct or indirect; or

(3) which would conflict with the employee's position as an employee of the City.

Plaintiff aspires to serve on the city council of DeSoto, Dallas County, Texas, and seeks declaratory and injunctive relief so that he may become a candidate for that office without forfeiting his position as an employee of the City of Dallas.

The Court holds that the provision encompassed by subparagraph (1) above is unconstitutional as applied to Plaintiff Hickman. The Court further holds that the provisions described by sub-paragraphs (2) and (3) above do not apply to Plaintiff and, accordingly, makes no determination with respect thereto.

Plaintiff is a uniformed police officer employed by Dallas in that capacity for the past eleven years. He is a resident of the City of DeSoto, where he has resided for the past eight years. DeSoto is a home rule city located entirely within Dallas County, Texas. The cities of Dallas and DeSoto share a common boundary of approximately 4.81 miles. DeSoto City Council members serve two-year terms and draw no compensation.

Plaintiff is a patrol officer; he does not hold and has never held a managerial or supervisory position with the Dallas Police Department, although he supervises "rookie" officers from time to time at crime scenes.

In February 1979 Plaintiff informed Defendant Chief of Police that he desired to become a candidate for a position on the DeSoto City Council. Plaintiff was told that should he become a candidate for that post, he would immediately forfeit his position with the Dallas Police Department, be-

cause of provisions of the Dallas City Charter, and regulations thereunder, summarized above and set forth verbatim below.

Plaintiff Hickman is not a stranger to politics. He served as a spokesman for Dallas' police and firemen in their successful bid for a pay increase in 1978. That activity, though time consuming, did not interfere with his job.

Approximately 4,116 Dallas employees (31%) do not reside within the city limits. Of approximately 2,000 Dallas Police Officers, sixty percent (60%) do not live in Dallas; at the time of trial, 48 police officers resided in DeSoto.

Dallas has contractual and informal agreements with several other cities, including DeSoto. The Dallas Fire Department provides mutual aid, backup and full service of emergency medical services and communications services to surrounding cities. The Dallas Transit System provides transportation services to at least six cities within Dallas County. Dallas is a party to the Greater Dallas Organized Crime Task Force, cooperating with other law enforcement bodies in criminal activity investigation pursuant to legislative authority. Dallas and DeSoto are members of the Regional Planning Commission (North Texas Council of Governments) established pursuant to Article 1011m, Texas Revised Civil Statutes.

However, DeSoto's only contractual arrangement with Dallas involves the sale of drinking water by Dallas to DeSoto, for which Dallas received over $200,000.00 from DeSoto in 1978. Dallas is currently involved in litigation with DeSoto and other cities concerning water rates. Plaintiff as a Dallas police officer has no connection with this controversy and the Court finds and concludes that the dispute does not affect Plaintiff's right to be a candidate for the DeSoto City Council.

At issue in this case is Chapter III, § 17(c) of the Dallas City Charter which provides:

"If an employee of the city shall become a candidate for nomination or election to any elective public office within

Dallas County; or elective public office in another county within the state, having contractual relations with the city, direct or indirect; or any elective public office which would conflict with his position as an employee of the city, he shall immediately forfeit his place or position with the city".

Police Department Code of Conduct, Chapter VII, § 7.2 is derived from the above Charter provision and provides:

"An officer of the Department may become a candidate for elected office outside the City and County of Dallas so long as that office has no direct or indirect contractual relations with the City of Dallas and so long as that elective office has no conflict of interest with the officer's City of Dallas employment. Otherwise, that officer shall immediately forfeit his place or position with the City.

City of Dallas Personnel Rule, Chapter VII, § 7.4(o), is also derived from the Charter provision and provides (as amended May 3, 1976):

"*Prohibiting holding or running for other office.* If any employee of the city shall become a candidate for nomination or election to any public office within Dallas County; or elective public office in another county within the state, having contractual relations with the city, direct or indirect; or any elective office which would conflict with his position as an employee of the city, he shall immediately forfeit his place or position with the city."

The only provision which applies to Plaintiff is that which prohibits him from becoming a candidate for elective office within Dallas County (under penalty of forfeiting his position with the City of Dallas).

■ Candidacy for public office is one form of political activity within the protection of the first amendment. *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). The right to engage in political activities, however, is not absolute. *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 567, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). In fact, the Supreme Court has held that broad restrictions upon the partisan political activities of federal and state civil service employees are constitutional. *Letter Carriers, id.* (federal employees); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (state employees). Indeed, the government has "interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

■ The right to run for public office is not a fundamental right but it is an important right. *Bullock v. Carter, supra; Magill v. Lynch*, 560 F.2d 22 (1st Cir., 1977).

■ ". . . [R]estrictions on the partisan political activity of public employees and officers, where such activity contains substantial non-speech elements, see *U. S. v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), are constitutionally permissible if justified by a reasonable necessity, see *Bullock v. Carter*, [supra], to burden those activities to achieve a *compelling public objective.*" *Morial v. Judiciary Commission*, 565 F.2d 295, 300 (5th Cir., 1977) (en banc) cert. den. 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (emphasis added).

The Court must therefore juxtapose the competing First Amendment interest of the Plaintiff with the "compelling public objective" of the Defendants in order to determine whether the prohibition in question is "constitutionally permissible."

The test is two part. First, Dallas, to restrict the right of candidacy, must demonstrate that its objectives are "compelling". Second, Dallas must show that it is reasonably necessary to restrict plaintiff's First Amendment right (to candidacy) to enable Dallas to achieve its "compelling" objectives.

The Court finds that Dallas has a compelling interest in maintaining the loyalty, efficiency and nonpartisanship of its employ-

ees. The Court further finds that such interest is sufficiently compelling that Dallas may put reasonable restrictions on the right of its employees to become candidates for elective office. For example, conflicts might arise if an employee were to challenge his supervisor, or run for mayor or the city council, in a Dallas city election. Candidacy for elective office, whether inside or outside Dallas, by those in managerial or supervisory positions might well create the possibility and the appearance of conflicts of interest. Such situations, however, are not before the Court here.

With respect to Plaintiff Hickman, the Court does not find the necessary nexus between Dallas' compelling public objectives and its consequent right to burden First Amendment activities to accomplish such objectives (on the one hand), and Plaintiff's proposed candidacy for the City Council of DeSoto (on the other hand). The ends to be attained do not justify the means employed. Defendants have not shown that Hickman's candidacy would impair or affect the integrity of Dallas city government or the loyalty and efficiency of Dallas employees. Dallas prohibits Hickman's candidacy simply because it is within Dallas County. The prohibition is arbitrary, artificial and unjustified.

■ The potential for conflict when a city employee seeks office *within the city* may well be sufficient to justify a restriction on candidacy. See *Magill v. Lynch, supra.*

■ The nature of the employee's responsibilities is an important consideration, *Elrod v. Burns,* 427 U.S. 347, 368, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1965); if an employee is in a managerial or supervisory position, his candidacy even in another jurisdiction would be more likely to threaten Dallas' compelling objectives. But where, as here, the employee's position involves no managerial or supervisory functions, the potential for harm to Dallas' legitimate and compelling interests is purely speculative.

■ Where a provision is drawn in an arbitrary manner without a reasonable correlation to the "compelling public objectives" of the city, the provision violates the First Amendment to the United States Constitution as made applicable to the states by the Fourteenth Amendment. See *Morial v. Judiciary Commission, supra.*

The Court recognizes that *Morial* dealt with candidacy in a "partisan" public election, whereas the DeSoto City Council race is "nonpartisan". The Court's decision in behalf of Plaintiff Hickman does not hinge upon the nonpartisan nature of his candidacy. However, the fact that the race and the position are nonpartisan clearly reduces the potential for interference with the compelling objectives of Dallas and, at the same time, strengthens the view that Hickman's right to be a candidate should not be denied. See *Magill v. Lynch,* at p. 29.

The Court believes facial invalidation of the provision would be inappropriate. See *Bruno v. Garsaud,* 594 F.2d 1062 (5th Cir. 1979). The provision in question might validly be used to restrict an employee's candidacy within the City of Dallas, or to prohibit a managerial or supervisory employee from running for elective office. The Court is of the opinion, though, that the provision as it stands is unclear and imprecise. The spectre of case-by-case analysis should be sufficient to encourage appropriate revision by the City of Dallas.

■ The Court concludes that the portion of Chapter III, Section 17(c), Dallas City Charter; Police Department Code of Conduct, Chapter VII, Section 7.2; and Personnel Rule, Chapter VII, Section 7.4(*o*), which provides that a Dallas employee "shall immediately forfeit his place or position with the City" if he becomes a candidate for elective office within Dallas County, violates the First Amendment rights of Plaintiff Hickman, and is therefore unconstitutional as applied to him.

Accordingly, the Defendants, City of Dallas and the Dallas Chief of Police, are permanently restrained and enjoined from enforcing these provisions against Plaintiff D. M. Hickman. Plaintiff will prepare and submit a judgment in conformity with this Opinion.

SO ORDERED.