Jerry PRICE and Rymer
Clark, Plaintiffs,

v.

**Don TOWNSEND, Individually and in His Official Capacity as Sheriff of Benton County, Arkansas, Defendant.**

No. 84–5183.

United States District Court,
W.D. Arkansas.
Fayetteville Division.

March 5, 1986.

Silas H. Brewer, Jr., Kaplan, Brewer & Miller, Little Rock, Ark., for plaintiffs.

David S. Clinger and Xollie Duncan, Office of the Pros. Atty., Bentonville, Ark., for defendant.

## MEMORANDUM OPINION

ARNOLD, District Judge.

Plaintiffs brought this action under 42 U.S.C. § 1983 complaining that they had been fired from their jobs in the Benton County Sheriff's Department in violation of rights secured to them by the First and Fourteenth Amendments to the Constitution of the United States. They assert, first, that they should have been afforded a hearing before their employment was terminated and, second, that the termination was unlawful because it deprived them of their rights of political expression guaranteed them by the First Amendment. Each of these contentions will be attended to in turn.

## I.

It is well settled that for public employees to be entitled to a hearing before termination of their employment, they must establish that they had a property interest in their jobs. Such an interest exists only if the employees have "a legitimate claim of entitlement" to continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Such a claim can be legitimately located in a statute, local ordinance, local rule, or express contract. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The existence *vel non* of the property interest is entirely a matter of state law, the only law, generally speaking, from which property rights in state employment can be derived. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

■ With these principles in mind, and in a related case involving claims to employment entirely identical to the ones asserted here, and arising under the same personnel policy, another judge of this court exhaustively analyzed and rejected these claims. *See Karr v. Townsend*, 606 F.Supp. 1121 (W.D.Ark.1985). The reasons adduced there in concluding the plaintiffs' case against them seem entirely persuasive, and the court therefore finds no merit in this aspect of plaintiffs' claims.

## II.

Plaintiffs further assert that they were fired in contravention of political rights secured to them by the First Amendment. In 1984, plaintiff Price, who was the Lieutenant in charge of the Benton County Jail, announced his intention to seek the Republican nomination for Sheriff of Benton County. The defendant, who was at the

time acting as Sheriff, at first indicated his belief that the Personnel Policy of Benton County required Price to take a leave of absence if he wished to seek elective office; and when Price refused to take such a leave, the defendant terminated his employment. When, however, the defendant learned that his understanding of the requirements of the personnel policy was in error, he reinstated Price to his job, all the while indicating nevertheless his preference that Price take a leave. Had there in fact been such a policy, and had Price been fired for refusing to adhere to it, we would have been faced with a rather difficult case similar to *Hickman v. Dallas*, 475 F.Supp. 137 (N.D.Tex.1979), where the court invalidated a rule requiring policemen who were seeking office to resign their positions. Though there was testimony in the present case that a prior provision of the Personnel Policy of Benton County had been interpreted in a similar manner, that provision was deleted from the regulations long before the incidents complained of in this case occurred.

■ We begin our consideration of this aspect of the case with the observation that plaintiffs' lack of a property interest in their jobs has no bearing on whether their First Amendment rights have been violated. The duties of governments to their employees in these kinds of cases are probably best comprehended when they are contrasted with the duties of private employers. Private employers, presumably, absent a tenurial or other specific contractual arrangement or positive enactment, might terminate a person's employment because the employee is running for office, or is a member of a certain political party, or simply because he or she has expressed a view offensive to or inimical to the interests of the employer. It is otherwise with the state, for it, unlike private employers, is constrained by the First Amendment. This difference is an incident of the familiar principle that First Amendment rights are secured only against governmental interference.

It follows that neither the state nor its subdivisions may fire even an employee at will because he or she exercised a First Amendment right. The right to run for office lies at the very heart and core of what it means to live in a republic, and it is thus well settled that the First Amendment protects that right from governmental interference. *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

The difficulty with plaintiffs' case is that the record is entirely devoid of any evidence that Townsend fired Price and Clark for an impermissible reason. After having been warned about letting his candidacy for office interfere with the performance of his duties as supervisor of the jail, Price, with the permission of Clark, his superior, took four hours off one afternoon to attend a political function. Price had previously worked on a holiday and there was evidence that he had intended that this time off be counted as compensation for that previous holiday work. The Benton County Personnel Policy, like many such policies, provides for this kind of compensation time. Two days later, the defendant fired both the plaintiffs and within a short time provided them with a letter stating in detail the reasons for his action. A main reason offered, though not by any means the exclusive one, was the absence of Price with Clark's permission as outlined above.

Townsend, who seemed to the court a thoroughly credible and creditable person, testified that he fired the plaintiffs because Price had left the jail without a supervisor during a critical time of the day and at a time when, partly on account of illness, the jail was under-staffed. The county had, moreover, previously been made a defendant in a law suit alleging the unconstitutionality of conditions at the jail, and the sheriff was rightly anxious that a special effort be made to insure the uneventful operation of that facility. The sheriff also outlined in his letters to the plaintiffs, and particularly in the one addressed to Clark, other reasons for the termination of their employment.

■ The court need not determine whether plaintiffs would have been fired even absent Price's candidacy for office, *see Mt. Healthy School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), for it is of the view that such a candidacy, if it interferes with the efficient and effective performance of a public employee's duty, need not be the object of special accommodation by the state. In other words, if it should appear, as it does in this case, that plaintiffs' employment would have been terminated irrespective of the reasons for Price's absence on the afternoon in question, then plaintiffs simply have not made out a case for the deprivation of First Amendment rights. The court finds that the evidence is overwhelming that the sheriff would have acted in the same way, and in accordance with sound reasons, whatever the reason for Price's absence. The defendant so testified, and there was no evidence whatsoever, either opinion or otherwise, offered to the contrary. The only slight signal of improper motive appears in defendant's letter to Clark outlining the reasons for his termination, in which the defendant explained that one of those reasons was Clark's failure to tell him in advance of Price's intention to take time off, particularly "in light of your open support of Price's political aspiration." Townsend, however, explained this statement to the court's satisfaction, as an assertion about Clark's motive for allowing Price to be absent. In other words, he believed that Clark had been influenced by his support of Price's candidacy and that that support had interfered with Clark's exercise of good judgment when faced with Price's request for time off. The court finds that the defendant did in fact believe that, and it is not necessary to find that that belief was correct. It is not the province of courts to second-guess employers.

■ It remains only to consider whether the county's insistence that Price work on the afternoon in question when he wanted to advance his candidacy for sheriff was, as a matter of law, a violation of Price's First Amendment right to seek elective office.

It seems to the court that this is an argument too extravagant to be maintained. For the reasons outlined above, it would appear that no special relaxation of employment rules is required on behalf of public employees who run for public office. It might, indeed, be right that any such special consideration would violate the rights of others seeking the same office, since it would be putting the power of the state behind a particular candidate. The record clearly shows, too, that the sheriff was alert to what he perceived to be his and the county's duty of strict neutrality, and he assiduously avoided any appearance that the sheriff's office was endorsing Price's bid for election.

For the reasons given, judgment will be entered for the defendants.