John E. SEGARS, Jr., and Gilla W. Byers, Plaintiffs,

v.

FULTON COUNTY, GEORGIA, Defendant.

Civ. A. No. C85–4426A.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 9, 1986.

Jeffrey O. Bramlett, George W. Fryhofer, Bondurant, Mixson & Elmore, Atlanta, Ga., for plaintiffs.

Lewis C. Horne, Jr., Franklin Biggins, Dorothy W. Famb, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiffs brought this action for declaratory and injunctive relief challenging certain Fulton County personnel regulations as applied to plaintiff Segars' candidacy for and service as mayor of Ball Ground, Georgia. Plaintiffs contend these regulations, as applied, unreasonably abridge their constitutionally protected rights of political speech and association in violation of the First and Fourteenth amendments. Currently before this court are the parties' cross-motions for summary judgment.

## FACTS

On November 12, 1985, plaintiffs brought this action and moved for a temporary restraining order prohibiting defendant Fulton County from compelling plaintiff: (1) to take leave without pay from his employment with Fulton County in order to file as a candidate or to conduct his campaign; and (2) to forfeit his employment with Fulton County in order to serve as mayor of Ball Ground. The court granted the temporary restraining order on November 18, 1985, under which plaintiff Segars successfully ran for mayor of Ball Ground. Plaintiff Segars was sworn into office on January 11, 1986. He has served in that capacity while remaining in the employ of Fulton County.

On December 11, 1985, plaintiff moved for judgment on the pleadings following

the expiration of the court's earlier order. The court denied plaintiffs' motion on January 9, 1986. The parties indicated a willingness for the case to receive speedy adjudication by filing a Joint Stipulation of Facts as to which there is no dispute on April 15, 1986. Plaintiffs moved for summary judgment and defendant filed a cross-motion for summary judgment on April 28, 1986. In addition to the Joint Stipulation of Facts, the parties filed the affidavits of plaintiff Segars, plaintiff Byers and Solicitor General Webb for this court's consideration.[1] The court, therefore, incorporates the stipulated facts as follows, and will disclose as necessary any other undisputed facts on which the court relies.

Plaintiff John E. Segars, Jr. is a citizen of the United States and a resident of Ball Ground, Cherokee County, Georgia.

Since March 1967, Mr. Segars has been continuously employed as a law enforcement officer in the classified service of Fulton County. Mr. Segars currently holds the position of chief investigator for the Solicitor General of the State Court of Fulton County. As chief investigator, Mr. Segars has supervisory responsibility for six investigators and, in turn, is directly supervised by the State Court Solicitor General and such Assistant Solicitor Generals as the Solicitor may designate.

Gilla W. Byers is a citizen of the United States and a resident of Ball Ground, Cherokee County, Georgia. Ms. Byers is registered to vote in Ball Ground municipal elections. Ms. Byers advocated Mr. Segars' candidacy in the December 7, 1985 mayor's race and voted for him.

Ball Ground is a town of approximately 700 residents located in the northeast quadrant of Cherokee County approximately 50 miles from the Fulton County Courthouse in Atlanta, Fulton County, Georgia. Ball Ground lies within the Atlanta Standard Metropolitan Statistical Area as defined by the 1980 Report of the United States Bureau of the Census.

The Ball Ground Town Charter, as modified by ordinance and practice, governs the operation of Ball Ground municipal government.

In Ball Ground municipal elections, including those held on December 7, 1985, neither ballots nor campaign literature formally identify candidates as belonging to or supported by any political party or organization. Candidates in these elections are not formally nominated by any party caucus or primary election. Under Section 14 of the Ball Ground Town Charter, any qualified citizen can stand for election to municipal office in Ball Ground by submitting a written request to the town clerk.

Mr. Segars stood as a candidate and won election as mayor of Ball Ground in the December 7, 1985 municipal election. Mr. Segars was sworn in as mayor of Ball Ground on January 11, 1986 and has since that time continuously performed his duties as mayor.

The duties of the mayor are defined in Section 5 of the Ball Ground Town Charter. These duties have been customarily performed by previous mayors on a less than forty hour a week basis. As part of his platform for election as mayor of Ball Ground, Mr. Segars pledged to improve city services. Since taking office on January 11, Mr. Segars has devoted approximately five hours per week to his mayoral duties.

Section 20 of the Ball Ground Town Charter provides authority, exercisable at the joint discretion of the mayor and city council, to pay the mayor a salary of up to $100.00 per year. Notwithstanding this express authority, Ball Ground has traditionally not paid its mayor a salary. Mr. Segars is not receiving a salary for his service as mayor.

Mayors of Ball Ground have traditionally received free city water service as a form of compensation for their duties. Mr. Segars, whose monthly city water bill averages approximately $7.50, has discontinued

---

1. As a preliminary matter, because it contains only inadmissable hearsay, the court grants plaintiff's motion to strike the Affidavit of Jacquelyn Mitchell. Fed.R.Civ.P. 56(e).

this tradition. He has declined free city water service and still pays his city water bill.

On Saturday, January 18, 1986 and Sunday, January 19, 1986, Mr. Segars attended a workshop for newly elected officials sponsored by the University of Georgia and the Georgia Municipal Association. Ball Ground reimbursed Mr. Segars for the $75.00 registration fee he paid to attend this workshop.

The City of Ball Ground customarily reimburses its elected officials, including the mayor, for reasonable out-of-pocket expenses necessarily incurred in the performance of their official duties. Requests for reimbursement must be submitted to and approved by the Ball Ground City Council. To date, the only reimbursement Mr. Segars has asked for or received has been the $75.00 registration fee relating to his attendance at the January 18–19, 1986 workshop for newly-elected officials.

In the course of his employment as chief investigator, Mr. Segars has investigated or supervised investigations of matters outside of Fulton County, Georgia. However, during his tenure with the office of the State Court Solicitor General, Mr. Segars has not yet been called upon to investigate any matter involving the town of Ball Ground or Cherokee County.

Since he took office on January 11, 1986, Mr. Segars has received one written complaint from Solicitor Webb and no verbal complaints from Solicitor Webb regarding his performance as Fulton County employee.

Fulton County has promulgated certain regulations limiting political activities by employees in the classified service of Fulton County. These Regulations, as amended and promulgated by the Board of Commissioners of Fulton County on January 30, 1985, provide in pertinent part:

*PR–1600–1—Political Activity*

No employee shall use or seek to use, directly or indirectly, his official authority or influence for the purpose of interfering with or affecting the result of a political election, nomination or refer-

endum, provided, however, that the foregoing shall not be interpreted or construed so as to abrogate or abridge the right of any such employee to express his political opinions, vote, seek elective office or otherwise participate in political undertakings in accordance with applicable law and Personnel Regulations, provided, however, that any non-elected employee (Classified or Unclassified) who runs for any public office shall be placed on LWOP under the provisions of PR–1200–11—Leave Without Pay (LWOP).

*PR–1200–11—Leave Without Pay (LWOP)*

(1) Upon approval by an Appointing Authority, an employee may be granted leave without pay (LWOP) for cogent reasons, not to exceed six (6) consecutive months, provided, however, that the Personnel Board may approve a one-time extension of up to an additional six (6) months, for a total absence of one (1) consecutive year, which shall constitute the maximum allowable amount of such leave. Examples of cogent reasons are illness, convalescence, emergencies, personal reasons, educational pursuits, or to run for public office, provided, however, that any non-elected employee (Classified or Unclassified) who runs for any public office shall be placed on LWOP, and provided further that if such employee is elected, he/she shall be separated from Fulton County employment effective as of the date of being sworn into such office.

\* \* \* \* \* \*

(3) Leave without pay (LWOP), except to run for public office, shall not be granted until after all of the employee's accumulated vacation leave has been exhausted; and if the leave without pay is due to health reasons, until all of the employee's accumulated sick leave has been exhausted. LWOP is mandatory to run for public office.

On October 4, 1985, Mr. Segars requested an interpretation from the Personnel Director for Fulton County of the Regula-

tions as applied to his plans to run for mayor of Ball Ground. Specifically, Mr. Segars requested administrative relief from the requirement that he take leave without pay during the part-time, two-week campaign and relief from the requirement that he forfeit his position with the classified service if elected.

On October 14, 1985, the Assistant County Attorney, responding on behalf of Fulton County, denied the requested administrative relief and affirmed that the Regulations, as applied to Mr. Segars, would compel him to take leave without pay in order to run and to forfeit his job with the County in order to serve as mayor of Ball Ground.

## DISCUSSION

Plaintiff John E. Segars, the Chief Investigator for the Solicitor General of Fulton County, brings this action along with plaintiff Gilla W. Byers, a citizen of Cherokee County registered to vote in Ball Ground municipal elections, against defendant Fulton County, plaintiff Segars' employer, to declare unconstitutional certain provisions of the Fulton County personnel regulations which compel plaintiff Segars (1) to take leave without pay to run for elective office, and (2) now that he has been elected, to forfeit his job with Fulton County.

In response, defendant contends that (1) its Regulations are constitutionally reasonable and (2) there are inherent conflicts with plaintiff Segars serving as Mayor of Ball Ground while holding a position with Fulton County that the Regulations reasonably prohibit.

■ Courts have held that the right to run for public office is not a fundamental right, but is an important right. *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Magill v. Lynch*, 560 F.2d 22 (1st Cir.1977). *Hickman v. City of Dallas*, 475 F.Supp. 137 (N.D.Tex.1979). Restrictions on that right are constitutionally permissable where the government entity impairing the right shows that the strictures placed on the ability to run for office are reasonably necessary to achieve a compelling public objective. *Morial v.*

*Judiciary Commission*, 565 F.2d 295, 300 (5th Cir.1977) (en banc) *cert. denied* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). Thus, Fulton County must demonstrate (1) that the "ends" of the challenged regulations are compelling and (2) that the "means" are reasonably necessary in order to justify impairing plaintiffs' First Amendment right.

Fulton County identifies the goals of its Regulations as (1) to protect the integrity of the Fulton County Civil Service and address the problem of potential corruption in the civil service system, (2) to protect employees from political interference, (3) to preserve public confidence in government, and (4) to maintain the efficiency of its employees. The court finds that Fulton County has a compelling interest in achieving each of these goals. Furthermore, each interest is sufficiently compelling that Fulton County may place reasonable restrictions on the right of its employees to run for and serve in elective office.

The court now turns to the second part of the inquiry. Courts have held in adopting a "balancing" approach to this second step of the inquiry, that the government may place limits on a public employee's right to run for office if the limits substantially serve government interests that are "important" enough to outweigh the employee's First Amendment rights. *Civil Service Commission v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (upholding the constitutionality of the Hatch Act). *See also Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Magill v. Lynch, supra; Hickman v. City of Dallas*, 475 F.Supp. 137 (N.D.Tex.1979).

Several factors have been held to influence whether, with respect to an individual government employee seeking elective office, a regulation is reasonably necessary to achieve the compelling public objective. First, the potential for overlap between the jurisdictional authority of each position is a factor that has been considered. *Hickman v. City of Dallas, supra.* Courts have

found the potential for conflict when a city employee seeks office *within the city* where he is an employee may well be sufficient to justify a restriction on a candidacy. *Magill v. Lynch, supra, cited in Hickman v. City of Dallas,* 475 F.Supp. 137 (N.D. Tex.1979).

Second, the nature of an employee's responsibilities is an important consideration. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). If an employee is in a managerial or supervisory position, his candidacy even in another jurisdiction would be more likely to threaten the compelling objectives. *Hickman, supra.*

Third, although no court has explicitly grounded its decision solely on this factor, courts have considered whether the elective office sought is "partisan" or "non-partisan" as a factor in determining the potential for interference with the compelling public objectives.[2]

With respect to the first factor, defendant contends that the mayoral position conflicts with plaintiff's duties as a "peace officer" under the *Code of Laws, Fulton County Georgia.* That provision establishes that plaintiff Segars:

> ... serve(s) at the pleasure of ... Solicitor-General, and shall act as, and have authority of *peace officers* of the State of Georgia ... [and] shall have the same authority to make arrests as the sheriffs, their lawful deputies, and court bailiffs to serve warrants, summons, rules, or-

ders, and process of every hand ... and make proper returns of service thereof." *Code of Laws, Fulton County,* § 4-2-40, Vol. I (1983). Further, the parties have stipulated that in the course of his employment as chief investigator, plaintiff Segars has investigated or supervised investigations of matters outside of Fulton County. However, during his tenure with the office of the State Court Solicitor General, plaintiff Segars has not yet been called upon to investigate any matter involving the town of Ball Ground or Cherokee County. (Joint Stipulation ¶ 14).

Second, defendant contends that the regulation is reasonable with respect to plaintiff Segars because he holds the position a Chief Investigator and has supervisory responsibility for six investigators (Joint Stipulation ¶ 3), and therefore an inherent conflict exists between his position and that as Mayor of Ball Ground.

Third, the parties have stipulated that in Ball Ground municipal elections, including those held on December 7, 1985, neither ballots nor campaign literature formally identify candidates as belonging to or supported by any political party or organization. Candidates in these elections are not formally nominated by any party caucus or primary election. Under Section 14 of the Ball Ground Charter, any qualified citizen can stand for election to municipal office in Ball Ground by submitting a written request to the town clerk. (Joint Stipulation ¶ 7).[3] In *Magill v. Lynch supra,* the First

---

**2.** The Supreme Court applying the "overbreadth doctrine" in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), found no "substantial" overbreadth in a statute restricting "partisan" campaigning. The court had no occasion to rule on the question of "non-partisan" elections. Courts since that decision have recognized degree of actual as opposed to statutory partisanship as a factor to be weighed in the balance. *See e.g., Magill v. Lynch, supra; Hickman v. City of Dallas, supra.* Other courts have ignored the factor altogether. *See Barry v. Dist. of Columbia Bd. of Elections,* 448 F.Supp. 1249 (D.D.C.1978).

**3.** Plaintiff argues that the description contained in the stipulation establishes that these elections are "non-partisan." Defendant contests this assessment arguing that state statutory provisions

control the determination of "partisan" or "non-partisan" status. Defendant cites the court to Ga.Off'l Code Ann. § 21-3-103 which provides as follows:

> Each candidate for nomination to an office *in a non-partisan primary* shall qualify as such candidate by personally, or by his duly authorized agent, filing notice of his candidacy in the office of the superintendent of his municipality at least 45 days prior to the date of the primary in accordance with the provisions of the charter and ordinances as of the municipality not inconsistent with the requirements of this chapter. (emphasis supplied).

Ga.Off'l Code § 21-3-103.

Defendant argues that because the provisions of the Ball Ground Charter provide that candidates for mayor must file with the clerk *fifteen* days prior to the election, these provisions do not

Circuit in finding that an election was partisan looked behind the clear statutory language of a town charter setting up a nominally non-partisan election to whether political parties played a large role in the election. Here, where the clear language of the statute creates a non-partisan election and there is no evidence that parties play a role in Ball Ground municipal elections, the court finds the mayoral election to be "nonpartisan."

Additionally, defendant contends that plaintiff Segars' responsibilities as Mayor of Ball Ground may in the future interfere with his efficiency as an employee (1) by causing interruptions in his normal work day as chief investigator and (2) by making him inaccessible if called to serve after hours.[4] The parties have stipulated that since plaintiff Segars took office as mayor of Ball Ground, he has received one written complaint from Solicitor General Webb (Joint Stipulation ¶ 15), apparently arising from plaintiff granting an interview and opportunity for local media to take photographs while plaintiff was at work in his Fulton County capacity. Also, defendant argues its compelling objective in maintaining the efficiency of its employees may be eroded in that plaintiff Segars is subject to call to duty at any and all time, day or night, (Webb Affidavit ¶ 10, ¶ 4).[5]

Having considered and weighed each of the appropriate factors, The court believes that defendant Fulton County has failed to establish that its personnel regulations bear a reasonable relation to its articulated goals. Therefore, the court finds those regulations are an unreasonable restriction on plaintiffs' First Amendment rights. First, the theoretical possibility that plaintiff's duties and loyalties as Chief Investigator might overlap with his duties and loyalties as Mayor of Ball Ground is remote at best. Defendant provides only speculation that plaintiff's dual responsibilities *may* create the potential for conflict.[6] Defendant can point to no fact to firmly establish this allegation. Defendant does not contend any investigation involving Ball Ground, or even Cherokee County has *ever* taken place in the past. Nor has defendant mentioned a context in which such a conflict might arise. A restriction without any geographical limitation whatsoever sweeps too broadly in the absence of some showing of the realistic expectation of a conflict.[7] Thus, the geographical

---

meet the statutory test for non-partisanship. The court disagrees. The Georgia Code Provision cited is inapplicable to this determination because it speaks to *primary* elections.

4. Defendant also argues under Ga.Off'l Code Ann. § 35–2–12 which regulates the political activities of employees of the Department of Public Safety, that because Fulton County has given plaintiff Segars the authority of a "peace officer" of the State of Georgia he is bound by the regulations for public safety employees. Such is patently not the case. It may be true that employees of the Public Safety Department vested with the authority to enforce criminal or traffic laws are "peace officers." It does not follow, however, that all "peace officers" are bound by the prohibitions placed on employees of the Department on Public Safety. Plaintiff Segars is not bound by these restrictions. Thus, the court has no occasion to rule on the constitutionality of Ga.Off'l Code Ann. § 35–2–12, but notes that if applied to restrict an employee's candidacy, it appears facially overbroad.

Secondly, defendant's federal law argument that 5 U.S.C. § 1502 (1977) prohibits plaintiff Segars' candidacy and service as mayor is meritless. Because this court has found the Ball Ground

mayoral election to be non-partisan, 5 U.S.C. § 1503 which permits local employees to run for nonpartisan elective office controls. It is also questionable whether the position of Chief Investigator for the Solicitor General's Office falls within the definition of "State or local office or employee" under 5 U.S.C. § 1501 which limits its application to local agencies whose principal employment is in connection with an activity financed in whole or in part by loans or grants made by the United States or a federal agency. Defendant has produced no evidence on this point.

5. Defendant has introduced no admissable evidence that plaintiff's responsibilities as mayor have interfered with his job performance as Chief Investigator.

6. Solicitor General Webb's affidavit admits that it is merely "possible" that plaintiff might be called on to conduct an investigation in Ball Ground without substantiating this contention. (Webb Affidavit ¶ 3) (emphasis supplied).

7. Defendant likewise has not offered an explanation that if the unlikely contingency actually

remoteness and lack of jurisdictional overlap between jobs demonstrate the absence of a reasonable connection between the county's goals and the broad sweep of its regulations as applied to plaintiff Segars.

Moreover, although courts have noted that a "supervisory" position may engender a conflict even outside the county of a plaintiff's employment *see Hickman, supra; Elrod v. Burns, supra,* here where the potential for actual conflict is negligible, the supervisory/subordinate distinction is less important. Therefore, the mere fact that as Chief Investigator plaintiff supervises six subordinates, without some realistic potential that a conflict of loyalty might arise, is insufficient to establish the proper nexus between the county's goals and its regulations.

Third, the court has determined the mayoral election in Ball Ground to be "nonpartisan". Thus, the concern that plaintiff Segars' position as mayor of Ball Ground might create the fact or appearance of partisan impropriety is absent in this case. The fact that the race and the position are nonpartisan reduces the potential for interference with the compelling objectives of Fulton County and enhances plaintiff Segars' claim that his right to run and serve as mayor not be denied. *Hickman supra* at 141.

Furthermore, there is no evidence before the court sufficient to validate defendant's concern that plaintiff merely holding another post inherently interferes with his efficiently dispatching the duties of Chief Investigator to any greater extent than other employees who engage in outside employment explicitly permitted by the county.[8]

Solicitor General Webb's conclusion that plaintiff's granting an interview to a local reporter constitutes interference with his duties as Chief Investigator is gratuitous and altogether insufficient to demonstrate a conflict or lack of efficiency.

Although it need not reach the issue, the court believes facial invalidation of the Regulations would be appropriate. *Id. Hickman supra* at 141. *See also Bruno v. Garsaud,* 594 F.2d 1062 (5th Cir.1979). As is, the Regulations are vague and overbroad.[9] However, the threat of further litigation should suffice to encourage appropriate revisions by the Fulton County Board of Commissioners.

In sum, the court finds that provisions PR–1600–1 "Police Activity" and PR–1200–11 "leave without pay" of the Fulton County Board of Commissioners which compel plaintiff Segars (1) to take leave without pay from his employment with Fulton County in order to file as a candidate or conduct an election campaign; and (2) to forfeit his employment with Fulton County in order to serve as mayor of Ball Ground, violate his First Amendment rights and are therefore unconstitutional as applied to him.

Accordingly, the court GRANTS plaintiffs' motion for summary judgment and permanently enjoins defendants from enforcing these provisions against plaintiff John E. Segars. Defendant's motion for summary judgment is thereby DENIED.

---

occurred, why plaintiff could not merely recuse himself from that particular investigation. Presumably, if any other conflict arose, for example where an investigator was personally or professionally acquainted with the subject of an investigation, the conflict would be resolved in this manner without hampering the efficiency of the office or calling its integrity into question.

8. The Regulations at Section PR–1100–4 provide as follows:

    An employee may engage in part-time or occasional extra employment outside of regular working hours, provided that such employment does not interfere with or conflict in any manner with assigned Fulton County duties and working hours; provided, however, that such extra work involving sworn law enforcement employees shall be approved in writing in advance by the Appointing Authority concerned.

9. If constitutionally valid at all, they may be valid with respect to an employee who decides to become a candidate for elective office within Fulton County.