**Michael R. MacKENZIE, Plaintiff,**

v.

**Wayne SNOW, Jr., Individually and as Chairman of the State Board of Pardons and Paroles; E.W. Linthicum, Jr., Individually and as Director of Central Operations of the State Board of Pardons and Paroles; Honorable Joe Frank Harris, Governor of the State of Georgia, Defendants.**

Civ. A. No. C87–1315A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 19, 1987.

Lee Sexton, Sexton Turner & Moody, Jonesboro, Ga., for plaintiff.

Wayne Preston Yancey, Office of State Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff was elected to positions on the Executive Committee of the Rockdale County Democratic Party and the Executive Committee of the State Democratic Party. Because of holding these posts, plaintiff was fired from his position as a Parole Review Officer of the Georgia Board of Pardons and Paroles. Plaintiff brought this action for declaratory and injunctive relief contending that the termination violated his constitutional rights of due process and equal protection under the Fourteenth Amendment and challenging the operative state statute and personnel regulations under which he was terminated as violating his constitutionally protected rights of political speech and association in violation of the First and Fourteenth Amendments. Currently before this court are the parties' crossmotions for summary judgment.

**FACTS**

Both parties agree that there exists no genuine issue of material fact and that the court may resolve the issues raised as a matter of law.

Plaintiff Michael R. MacKenzie was employed by the Georgia State Board of Pardons and Paroles as a Parole Review Officer until his discharge effective May 26, 1987. Plaintiff's position with the Board was classified under the Georgia State Merit System of Personnel Administration. The Georgia State Personnel Board promulgates rules and regulations that govern the duties, rights and conduct of state employees and employers whose positions are within the jurisdiction of the Georgia State Merit System.

In early June 1986, plaintiff sought the advice of the Board Personnel Manager, Mr. Robert Allison regarding plaintiff's de-

sire to run for local level Democratic Party Office. Mr. Allison sought clarification from the State Merit System about apparent conflicts between Ga.Off'l Code Ann. § 45–10–70 and Ga.Off'l Code Ann. § 42–9–15 and certain rules and regulations of the State Personnel Board dealing with employee's political activity.

Ga.Off'l Code Ann. § 42–9–15 states:

No member of the board or full-time employee thereof, during his service upon or under the board, shall engage in any other business or profession or hold any other public office; nor shall he serve as a representative of any political party or any executive committee or other governing body thereof, or as an executive officer or employee of any political committee, organization, or association; nor shall he be engaged on the behalf of any candidate for public office in the solicitation of votes or otherwise become a candidate for public office, without resigning from the board or from employment by the board. (Ga.L.1943, p. 185, § 10.)

Ga.Off'l Code Ann. § 45–10–70 states:

No rules or regulations of any state agency, department, or authority shall prohibit nonelective officers or employees of this state from offering for or holding any elective or appointive office of a political subdivision of this state or any elective or appointive office of a political party or political organization of this state, provided that the office is not full time and does not conflict with the performance of the official duties of the person as a state employee. (Code 1981, § 45–10–70, enacted by Ga.L.1985, p. 427, § 1.)

In September 1986, Allison advised plaintiff that his activities appeared to be in a "gray area" and that perhaps plaintiff should decide against running. However, plaintiff contends that Allison indicated that no adverse personnel action would be forthcoming against the plaintiff. Plaintiff advised Allison that he had discussed the legislative intent of section 45–10–70 with its author, Georgia State Senator Culver Kidd and Mr. Dale Knesel, a State Merit System executive. Plaintiff contends that none of these officials discouraged him from running for these posts. On December 6, 1986, plaintiff ran for and was elected to the Executive Committee of the Democratic Party of Georgia.

In December 1986, after plaintiff's election, defendant Linthicum, Director of Central Operations for the State Board of Pardons and Paroles, requested plaintiff to provide the Board with the description and duties of his new post. Plaintiff contends that he was unable to comply with this request until April 1987. In the interim, plaintiff contends that Senator Kidd advised him that the revised rules of the State Personnel Board would permit plaintiff to serve in his elective office.

In January 1987, defendant Snow, Chairman of the State Board of Pardons and Paroles, advised plaintiff that he would seek the opinion of the Georgia State Attorney General as to plaintiff's eligibility to hold these posts concurrently with his job with the Board. The Attorney General issued his opinion to defendant Snow in April 1987.

Based on the Attorney General's opinion, defendant Linthicum proposed plaintiff's termination. Plaintiff failed to resign his political posts within the time allowed by the proposed termination, and therefore, defendant Linthicum in a letter dated May 8, 1986, proposed that plaintiff forfeit his position with the State Board of Pardons and Paroles. Defendant Snow afforded plaintiff an opportunity to respond to the proposed action and plaintiff personally appeared before defendant Linthicum on May 8, 1987 and further responded by letter dated May 12, 1987, to defendant Snow. After considering the response and the proposed action, defendant Snow issued a letter dated May 19, 1987 terminating plaintiff's employment with the Board effective May 26, 1987.

Defendant Snow's letter of May 19, 1987 enumerates the following grounds for the termination and closely tracks the opinion letter of the Attorney General:

Misconduct in that since on or about April 29, 1987, after you received a copy

of the Attorney General's opinion (Re: Employees of the State Board of Pardons and Paroles Who Engage in Political Activity in Violation of O.C.G.A. § 42–9–15 can be terminated from their Positions with the Board, dated April 23, 1987) you continued to occupy your positions with a political party and you failed to resign your position with the Board as required by the law.

Insubordination in that in or about December 1986 you were requested to provide the agency with a list of your duties and responsibilities with the Democratic party so that it could be determined whether those duties were in violation of the Rules of the State Personnel Board. You failed to provide the requested information.

Insubordination in that on May 7, 1987 you were given a written directive to resign your positions with a political party no later than May 8, 1987, and you were further directed to provide acceptable proof that you had done so no later than 4:00 P.M. on May 8, 1987. The proof was to also confirm that you were no longer participating in any political activity that is in violation of the law or the Rules. You failed to comply and furthermore stated that you would not resign your positions.

These charges are each sufficient to justify your dismissal. You are hereby dismissed in accordance with Rule 15 of the Rules and Regulations of the State Personnel Board, effective at the close of business on May 26, 1987.

I have also reviewed Mr. Linthicum's proposal that your employment be terminated through the forfeiture of your position under the provisions of paragraphs 12.205.2 and 12.206.1 of the Rules and Regulations of the State Personnel Board. The forfeiture is brought about as a result of your engagement in political activity in violation of O.C.G.A. 42–9–15 and paragraph 3.501.1 of the Rules of the State Personnel Board, and is supported by the following specific:

> By your own admission you are a member of both the State and County Executive Committees of the Democratic party. For you to hold such offices is in violation of O.C.G.A. 42–9–15 which specifically prohibits your holding such offices while being a full time employee of the Board. By engaging in political activity in violation of O.C.G.A. 42–9–15 you are in violation of paragraph 3.501.1 of the Rules and Regulations of the State Personnel Board and are subject to forfeiture of your position as provided in paragraph 3.506 of those rules.

The foregoing charge is sufficient to warrant the forfeiture of your position. Therefore, it is my final determination that your employment with the State Board of Pardons and Paroles is terminated through the forfeiture of your position effective May 26, 1987. Furthermore, your termination is deemed a voluntary forfeiture of your position in accordance with paragraph 12.205.2 of the Rules of the State Personnel Board.

The court held a hearing on June 19, 1987 on plaintiff's motion for a temporary restraining order seeking to secure reinstatement of plaintiff to his position. The court in its order of that date denied plaintiff's motion and suggested that the parties file crossmotions for summary judgment.

## DISCUSSION

Plaintiff contends that defendants violated his rights of due process and equal protection protected in the Fourteenth Amendment by (1) selectively enforcing Ga. Off'l Code Ann. § 42–9–15 as to plaintiff, (2) enforcing section 42–9–15 given the existence of Ga.Off'l Code Ann. § 45–10–70 which plaintiff contends repeals the former statute, and (3) terminating plaintiff in an arbitrary and capricious manner where plaintiff contends the Rules and Regulations of the State Personnel Board, Section 42–9–15 and Section 45–10–70 are in conflict both permitting and prohibiting plaintiff from engaging in the conduct for which he was discharge. Additionally, Plaintiff contends that enforcing section 42–9–15 against him violates his constitutionally protected rights of political speech and free association protected by the First and Fourteenth amendments. Plaintiff also al-

leges a state cause of action for a declaration (1) that section 45–10–70 repealed section 42–9–15 either impliedly or directly and (2) that no means existed to enforce the state law prohibiting employees of the Board from holding positions in partisan political parties. Ga.Off'l Code Ann. § 42–9–15.

Defendant counters that section 42–9–15 and section 45–10–70 may be read as consistent with each other to give effect to each statute; that the opinion of the Attorney General to this effect bound plaintiff; that plaintiff was provided adequate procedural due process to oppose this finding and his termination; and that the prohibitions of section 42–9–15 as applied to plaintiff are reasonably necessary to achieve a compelling public objective, and therefore, do not abridge plaintiff's First amendment rights.

Plaintiff in his reply brief concedes that he has no valid claim that defendants violated his rights of procedural due process as he was given adequate notice, an opportunity to respond and an opportunity for a post deprivation appeal. Likewise, plaintiff concedes that there is no merit to that portion of his pendent state law claim alleging that no means existed to enforce section 42–9–15. The court now turns to plaintiff's remaining claims.

The court feels that in order to resolve the remaining issues on summary judgment the court must address two questions: (1) what statutory scheme governs the dispute? and (2) have actions by defendants under that statutory scheme violated plaintiff's substantive constitutional rights?

**A. Applicable Statutory Scheme**

The authority cited by defendants to support plaintiff's termination for political activity is section 42–9–15, the Rules of the Personnel Board and the opinion of the Attorney General dated April 23, 1987. Plaintiff concedes that Code Section 42–9–

15 passed in 1943 expressly prohibits a member of the Board or a full-time Board employee from serving on any executive committee or other governing body of a political party. Plaintiff argues, however, that section 45–10–70 approved in 1985 expressly or impliedly repeals the earlier section by providing that no rules or regulations of any state agency, department or authority shall prohibit nonelective officers or employees of the state from holding office in a political party. Plaintiff also argues that this conflict between the statutes renders nonsensical Rule 3.501.I Rules of the State Personnel Board which states:

> 3.501. An employee in the classified service shall not:
>
> I. Engage in any political activity in violation of federal or state law including but not limited to.... Ga.Off'l Code Ann. 42–9–15 [and] Ga.Off'l Code Ann. 45–10–70.[1]

Defendants argue that section 45–10–70 did not repeal several specific statutes applying to limited number of employees such as section 42–9–15. Defendants contend that by the clear and concise language of section 45–10–70, that statute prohibits only the promulgation by a state agency of rules and regulations affecting an employee's ability to engage in certain political activity. In essence, defendants argue that section 45–10–70 indicates only that the General Assembly wants to reserve such decisions for the legislative body itself, not delegate that rule to state agencies. Section 42–9–15, defendants argue, is not a rule or regulation promulgated by a state agency.

Plaintiff, in response, argues that defendants have ignored the intent of the legislature in enacting section 45–10–70. In support, plaintiff quotes the preamble to the statute which states the Bill was passed:

> To amend Article 2 of Chapter 10 of Title 45 of the Official Code of Georgia Annotated, relating to conflicts of interests, so

---

1. Additionally, Rule 3.506 states:
   Any employee in the classified service who violates any of the foregoing provisions of this section shall forfeit his position or be subject-

ed to appropriate disciplinary action as provided elsewhere in these rules and regulations.

as to provide that no rules or regulations of any state agency, department, or authority shall prohibit non-elective officers or employees of the State from offering for or holding any elective or appointive office of a political subdivision of this State or any elective or appointive office of a political party or political organization; to provide exceptions; to repeal conflicting laws; and for other purposes.

Plaintiff also points to section 2 of the statute which states:

All laws and parts of laws in conflict with this Act are repealed.

Ga.Off'l Code Ann. § 45–10–70.

■ The court believes that section 45–10–70 does not expressly or impliedly repeal section 42–9–15. Section 45–10–70 fails to mention section 42–9–15 at all. The preamble to section 45–10–70 relied on heavily by plaintiff is not to be read as part of the statute in Georgia and does not preclude a reading consistent with the existence of section 42–9–15. W. Eskridge & P. Frickey, *Statutes and the Creation of Public Policy*, 646 (1987). The "boilerplate" repeal provision of Section 2 merely begs the question whether the two statutes are in conflict.

■ Absent explicit language repealing one statute, this court believes that where fairly possible, two statutes should be construed together to give effect to each. 2A C. Sands, *Sutherland Statutory Construction* § 45.11. The intention to repeal must be clear, plain and unmistakable. *See Department of Transportation v. Cochran*, 160 Ga.App. 583, 287 S.E.2d 599 (1981); *Hines v. Wingo*, at 120 Ga.App. 614, 616, 171 S.E.2d 905 (1969). Here, the court agrees with defendants' reading that section 45–10–70 removes from state agencies the right to prohibit political activity and vests this responsibility solely with the General Assembly as expressed by section 42–9–15.

■ Plaintiff's argue that the author of section 45–10–70, Senator Culver Kidd, Chairman of the Governmental Operations Committee, testified by affidavit that he intended the bill to supercede section 42–9–15. Such testimony, however, is not a weighty consideration in statutory analysis.[2] Additionally, Georgia courts have consistently held that repeals by implication are not favored and result only where the latter of the two acts is clearly repugnant to the former or so inconsistent with the former statute that the two cannot stand together. *See Guye v. Home Indemnity Co.*, 241 Ga. 213, 244 S.E.2d 864 (1978); *Hines v. Wingo*, 120 Ga.App. 614, 616, 171 S.E.2d 905 (1969).

■ Not only do the applicable rules of statutory interpretation lead to the conclusion that section 42–9–15 should be given full effect, but such a construction is sound when viewed in the context of the evolution of the pardons and paroles process in Georgia. It is the State Board of Pardons and Paroles and its employees that are charged with determining whether a convicted felon who has not completed his judicially imposed punishment should be released into society. The concern for keeping this process depoliticized is a strong one.

The evolution of the statutory scheme and history of the Board demonstrates the movement in this state toward removing even the appearance of any political influence from the Board's decision making process. The Board was created by constitutional amendment in 1943. Under this provision, the Governor lost much of his authority with regard to the Pardons and Paroles function and retained only the authority to suspend sentences. *See Whittle v. Jones*, 198 Ga. 538, 32 S.E.2d 94 (1944). Section 42–9–15 was passed in the same year to foreclose shifting the potential politicization from the Governor to the Board by prohibiting Board members and employ-

---

**2.** Assuming that the statutes are ambiguous enough to warrant inquiring into legislative history, a statement by a bill's sponsor two years after passage is not entitled to great weight in statutory interpretation. *See* Huntzel, *Legislative Law and Process* at 202 (1980); *see general-* ly W. Eskridge & P. Frickey, *Statutes and the Creation of Public Policy*, 759–60 (1987); *see also* Perman, *Statutory Interpretation in California; Individual Testimony as an Extrinsic Aid*, 15 U.S.F.L.Rev. 241 (1981).

ees from holding positions in partisan political parties.

As part of the general 1983 constitutional revision, the Governor lost the authority to suspend executions of sentences, thus divesting the Governor of all remaining authority in the pardons and paroles process. Under the 1983 Constitution, that power is now completely vested in the Board. *Compare* Article V Section II, ¶ 2 of Constitution of Georgia of 1976 (Ga. Code Ann. § 2–2802) and Article IV, Section II, ¶ 2 Constitution of Georgia of 1983.

It was reasonable, therefore, for the General Assembly to loosen its limitations on political activity for state employees generally, *see* section 45–10–70, while continuing to prohibit Board members and employees from engaging in political activity. The 1983 constitutional changes enhance the strength of this view.

The court finds, therefore, that section 45–10–70 should be read consistently with section 42–9–15 to give full effect to the statute prohibiting the specified political activity by Board members and employees.

### B. Alleged Substantive Violations of Plaintiff's Constitutional Rights

#### 1. Substantive Due Process

Plaintiff contends that the coexistence of sections 45–10–70 and 42–9–15 violate substantive due process because plaintiff argues such a violation arises where two statutes govern the same conduct and the two statutes at issue *permit* and *prohibit* the same conduct respectively. Plaintiff has cited no cases to support this proposition. Regardless, the court has found that the latter statute does not repeal the former and that the two statutes may be read consistently to give effect to both. No due process violation exists.

■ Likewise, plaintiff complains he was terminated in violation of his substantive due process rights under personnel rules and regulations which embody the same alleged conflict. As the court finds no contradiction between the statutes, the court finds no violation in the application of the personnel rules for the same reason.

#### 2. First Amendment Claims

Plaintiff challenges the constitutionality of section 42–9–15 and the State Personnel Board Rules enforcing this statute as violation of his First Amendment rights of political speech and free association. In response, defendants contend that (1) the statute and rules are constitutionally reasonable and (2) there are inherent conflicts with plaintiff MacKenzie serving in his current political posts that the statute and rules reasonably prohibit.

Courts have held that the right to run for public office is not a fundamental right, but is an important right. *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Magill v. Lynch*, 560 F.2d 22 (1st Cir.1977); *Hickman v. City of Dallas*, 475 F.Supp. 137 (N.D.Tex.1979). Restrictions on that right are constitutionally permissible where the government entity impairing the right shows that the strictness placed on the ability to run for office are reasonably necessary to achieve a compelling public objective. *Morial v. Judiciary Commission*, 565 F.2d 295, 300 (5th Cir.1977) (en banc) *cert denied* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). Thus, defendants must demonstrate (1) that the "ends" of the challenged regulations are compelling and (2) that the "means" are reasonably necessary in order to justify impairing plaintiff's First Amendment rights. *Segars v. Fulton County*, 644 F.Supp. 682, 685 (N.D.Ga.1986) (Hall J.).

Defendants identify the goals of the statute and rules as (1) to protect the integrity of the public employment system and address the problem of potential corruption in public employment; (2) to protect employees from political interference; (3) to preserve public confidence in government by avoiding the appearance that employees are practicing political justice rather than true justice (the appearance that decisions are based upon furtherance of the public objectives of the civil servant); and (4) to maintain the efficiency of its employees. The court finds that defendants have a compelling interest in achieving each of these goals. Furthermore, each interest is

sufficiently compelling that defendants may place reasonable restrictions on the right of employees to run for and serve in elective office.

The court now turns to the second part of the inquiry. In adopting a "balancing" approach to this second step of the inquiry, courts have held that the government may place limits on a public employee's right to run for office if the limits substantially serve government interests that are "important" enough to outweigh the employee's First Amendment rights. *Civil Service Commission v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1978) (upholding the constitutionality of the Hatch Act). *See also Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Magill v. Lynch supra; Hickman v. City of Dallas supra.*

Several factors have been held to influence whether, with respect to an individual government employee seeking elective office, a regulation is reasonably necessary to achieve the compelling public objective. First, the potential for overlap between the jurisdictional authority of each position is a factor courts have considered. *Hickman v. City of Dallas supra.* Second, the nature of an employee's responsibilities is an important consideration. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1965). Third, although no court has explicitly grounded its decision solely on this factor, courts have considered whether the elective office sought is "partisan" or "nonpartisan" as a factor in determining the potential for interference with the compelling public objectives.[3] *See Segars v. Fulton County*, 644 F.Supp. at 685–86.

Plaintiff argues with respect to the first factor that his part-time positions on the

county and state executive committees of the Democratic Party have no relationship whatsoever with his position as a Parole Review Officer. Plaintiff contends that his political posts are concerned with the selection process of candidates to run for local and state political offices, not the members State Board of Pardons and Paroles whose members are appointed by the Governor.

Defendants argue that both the position of parole review officer and party executive committee have statewide jurisdictions, and therefore, overlap completely. Both arguments miss the mark.

The question is whether there is realistic potential for conflict demonstrated between the two positions. In addressing other issues in their briefs, defendants show that such potential exists. Defendants' Brief in Support at 8–12. The court feels that at the very least that whenever politically sensitive pardons and paroles decisions present themselves, as they often do, the fact of an official party activist working on such a matter creates an overlap or conflict of interests if not precisely an overlap in specific jurisdiction. Here, the realistic expectation of such conflict clearly exists.

More importantly, plaintiff's former duties involved reviewing whether convicted felons should be allowed to return to society.[4] It is desirable for a state to ensure that this function should be absolutely free from any political considerations or the appearance of political considerations. Public confidence would be quickly eroded if such considerations infected the decision making process. This factor weighs heavily in favor of the state's current prohibition of partisan political activity by parole review officers.

Finally, plaintiff's position on the Executive Committee of the State Democratic

---

**3.** The Supreme Court applying the "overbreadth doctrine" in *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), found no "substantial" overbreadth in a statute restricting "partisan" campaigning. The court had no occasion to rule on the question of "non-partisan" elections. Courts since that decision have recognized degree of actual as opposed to statutory partisanship as a factor to be weighed in the balance. *See e.g., Magill v. Lynch, supra; Hickman v. City of Dallas, supra.*

Other courts have ignored the factor altogether. *See Barry v. Dist. of Columbia Bd. of Elections*, 448 F.Supp. 1249 (D.D.C.1978).

**4.** Plaintiff admits that 25% of the duties assigned a parole review officer involve determination of presumptive parole dates. Plaintiff's Brief in Support at 13; Document No. 1 attached to Affidavit of Robert Allison.

party is "partisan", reenforcing the conclusion that the appearance of propriety in Board functions is diminished by plaintiff's presence as an official party activist.[5]

█ The court finds that section 42–9–15 and the applicable Personnel Board rules do not unreasonably limit plaintiff's First Amendment rights.

3. Equal Protection Claims

Plaintiff once again couches his argument in statutory interpretation terms of which the court has already disposed. In this vein, plaintiff rejects defendants' argument that section 45–10–70 does not apply to Board of Pardons and Paroles employees. More importantly, however, plaintiff seems to contend that the operation of section 42–9–15, which treats Board employees differently from other employees, creates an Equal Protection violation.

While it is true that a First Amendment claim typically asserts that the government cannot deprive the plaintiff of some freedom and an equal protection claim asserts that the government may not single out the class of which the plaintiff is a member for deprivation, it is equally true that every First Amendment claim can be transformed into an Equal Protection claim merely by focusing on the classification embodied in the legislative scheme. *Morial v. Judiciary Comm'n of State of Louisiana*, 565 F.2d 295, 304 (5th Cir.1977). It is appropriate, therefore, to employ the same standard of scrutiny to the derivative equal protection claim as applied to the underlying First Amendment claim. *Id.*[6]

As there is no allegation of suspect classification at issue here, the applicable Equal Protection doctrine here mirrors precisely the court's foregoing analysis regarding plaintiff's First Amendment claims in subsection B(2) of this order. *Id.*

█ Because an "important" right is involved, the challenged statute and rules involved must withstand "intermediate scrutiny". The court once again engages in a bifurcated inquiry to determine whether (1) the "ends" of regulating the right are compelling and (2) the "means" are reasonably necessary to the vindication of the compelling state interest. For the same reasons set out in this court's First Amendment discussion *supra*, the court believes that section 42–9–15 and the applicable personnel rules pass muster under an Equal Protection analysis as well.

First, the state has a compelling interest in (1) protecting the integrity of the public employment system; (2) protecting employees from political interference; (3) preserving public confidence in government by avoiding the appearance that Board employees are practicing political justice rather than true justice; and (4) maintaining the efficiency of its employees.

Second, there is a realistic potential for conflict between plaintiff's position as Board parole review officer and his partisan political posts, and the state has sought to ensure that the parole function is free from any political considerations or the appearance of political considerations by prohibiting such a person from holding political office. Section 42–9–15, therefore, draws a reasonable distinction in forbidding members and employees of the Board of Pardons and Paroles from running for political office.

The court finds no Equal Protection violation.

**CONCLUSION**

The court GRANTS summary judgment for defendants and conversely DENIES

---

**5.** Plaintiff correctly asserts that the court faces the question whether the specter of partisan impropriety is sufficient reason to limit plaintiff's political activity. Implicit in the court's analysis is that, where the duties of an employee are as sensitive and potentially volatile politically as those of a Board employee, the answer is yes.

**6.** Of course, if the legislative scheme embodies a classification which is itself constitutionally suspect, strict constitutional scrutiny is required without regard to the nature of the underlying deprivation. *See e.g., Graham v. Richardson*, 403 U.S. 365, 371–73, 91 S.Ct. 1848, 1851–52, 29 L.Ed.2d 534 (1971). No such allegation is made in this case.

summary judgment for plaintiff.[7] This action terminates the case.

---

**7.** The court does not reach the issue of whether plaintiff's employment was voluntary forfeited through provisions 12.205.2 and 12.206.1 of the Rules and Regulations of the State Personnel Board. The court has found that plaintiff's admitted activities violated Rule 3.501(I) and that plaintiff was properly terminated pursuant to Rule 3.506.