**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2164**

NANCY LOFTUS,

Plaintiff - Appellant,

v.

DAVID BOBZIEN, County Attorney, Fairfax County; EDWARD L. LONG, County Executive, Fairfax County,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:15-cv-00692-CMH-JFA)

Argued: October 25, 2016                    Decided: February 8, 2017

Before AGEE, DIAZ, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Diaz and Judge Thacker joined.

**ARGUED**: John Chapman Petersen, SUROVELL ISAACS PETERSEN & LEVY PLC, Fairfax, Virginia, for Appellant. Sona Rewari, HUNTON & WILLIAMS LLP, McLean, Virginia, for Appellees. **ON BRIEF**: Jason Frank Zellman, SUROVELL ISAACS PETERSEN & LEVY PLC, Fairfax, Virginia, for Appellant.

AGEE, Circuit Judge:

David Bobzien ("Bobzien"), the County Attorney for Fairfax County, Virginia, terminated the employment of Nancy Loftus ("Loftus"), an assistant county attorney, following her election to the Fairfax City, Virginia, City Council (the "City Council"). After an unsuccessful grievance proceeding, Loftus filed suit in the United States District Court for the Eastern District of Virginia, challenging Bobzien's decision to terminate her employment "solely because she had been elected to the City Council." J.A. 4. Loftus contended Bobzien's actions violated her rights under the First Amendment to the United States Constitution as well as a Virginia statute and Fairfax County ordinance. The district court dismissed Loftus' complaint, concluding the termination of her employment did not violate the First Amendment, Virginia law or the local ordinance. For the reasons set out below, we affirm the district court's judgment.

I.

From 1997 until her termination in 2014, Loftus was employed by the Fairfax County Attorney's Office as an assistant county attorney.[1] In early 2014, Loftus contemplated becoming a candidate for the Fairfax City Council, the governing body of a

---

[1] Because the district court decided the case on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint" and attached exhibits are true. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (discussing use of exhibits attached to a complaint). Numerous exhibits were attached, argued by the parties before the district court and on appeal. Accordingly, those exhibits are properly part of the record and relevant to the disposition of the issues before us.

2

separate and independent municipality from Fairfax County under Virginia law. *See* Va. Const. art. VII, § 2; Va. Code Ann. § 15.2-204. In February 2014, Loftus told Bobzien she was "considering a run" for the City Council in an election scheduled for May 2014. J.A. 10. As of February 2014, however, she had not announced her candidacy and had not formally filed to become a candidate.

Bobzien initially expressed misgivings about Loftus' intentions, stating in an email to her that election to the City Council might conflict with her responsibilities as an assistant county attorney because the County Attorney's Office "routinely ha[s] dealings with the City that can lead to contention." J.A. 27. At the time, Fairfax County and Fairfax City had a number of "ongoing business, contractual and governmental relationships," including "numerous agreements and memoranda of understanding" that provided for services such as "police, fire, library, health, welfare and social services, and sanitary sewer and waste disposal." J.A. 32. In response to Bobzien's concerns, Loftus represented that she had "never been involved in any case against, or even with, the City" in her duties as an assistant county attorney. J.A. 26.

On April 17, 2014, once Loftus had become an official candidate for City Council, Bobzien sent her an extensive and thorough letter that again expressed concern about the conflict of interest that Loftus' election to the City Council would create. In particular, the letter noted that if Loftus were to win the election, her duties as a member of the City Council would conflict with her responsibilities as an assistant county attorney because of the numerous legal relationships between the City and County. Bobzien also expressed concern that Loftus' conflict of interest would be imputed to every attorney in the Fairfax

3

County Attorney's Office. In that circumstance, all of the County's attorneys would be prevented from representing Fairfax County not only in court proceedings adverse to Fairfax City but also in civil matters. In view of that apparent conflict, Bobzien cautioned Loftus that "if you decide to continue to pursue your election to the City Council, and you are successful, you will not be able to continue your employment with this Office once you take office as a member of the Fairfax City Council." J.A. 32.

In conveying his concerns to Loftus in the April 17 letter, Bobzien referenced Virginia's Rules of Professional Conduct (the "Rules") and three legal ethics opinions ("LEOs") from the Virginia State Bar's Standing Committee on Legal Ethics (the "Standing Committee") interpreting the Rules: LEO 1718, LEO 1763, and LEO 1773. In relevant part, LEO 1718 provides that "if a law firm represents clients before a governing body when one of its lawyers is a member, there is the appearance, if not the fact, of conflicting loyalties." J.A. 50. LEO 1718 explains the ethical dilemma for the lawyer-legislator:

> The law firm, which includes the lawyer who sits on the governing body, owes a duty of loyalty to the client and must use all available resources to achieve the client's lawful objective. The duty of loyalty is diluted and the available resources impaired, however, when the law firm must exclude the lawyer-legislator from the representation, and the law firm cannot enlist his knowledge of the subject matter or of the governing body in the representation. The lawyer-legislator may have acquired non-public or even confidential information as a member of the governing body that would serve the client's interest. The client is denied the benefit of such information, however. If the law firm seeks client-consent to the limitation on its resources, the law firm might well be asking for consent to less than adequate representation.
>
> Similarly, the lawyer-legislator has a duty to the governing body on which he/she serves and to his/her constituents. When he/she abstains from

4

the governing body's decision-making because it involves his/her law firm's representation of a client, then his/her personal interest is elevated over his/her duty as a public servant. Both the governing body and the lawyer-legislator's constituents are deprived of the benefit of his/her voice in the decision-making process.

J.A. 50. The LEO concludes "it is not ethically permissible for a law firm to represent a client in a matter before a governing body when one of the law firm's lawyers is a member of the governing body even if he/she discloses the conflict and abstains from participation and voting in the matter." J.A. 50.

In LEO 1763, the Standing Committee reaffirmed LEO 1718 and concluded: "for an attorney/board member to recuse himself from a matter before his board in order that his law firm may accept representation of a private client creates an impermissible conflict of interest. . . . [and, thus,] an attorney may not accept representation of a client in a matter that would require an appearance before a board, or other public body, of which any member of that attorney's firm is a member." J.A. 52. Finally, in LEO 1773, the Standing Committee referenced LEO 1718 and LEO 1763 as describing an "obvious" conflict, which cannot be cured by recusal because "recusal would violate the attorney/board member's obligations to his constituents." J.A. 53. Based on those LEOs, Bobzien concluded Loftus' election to the City Council would create a similar and intractable conflict of interest both for her and the Fairfax County Attorney's Office, as she had been advised in the April 17 letter.[2]

---

[2] For all intents and purposes, the Fairfax County Attorney's Office is deemed a law firm similarly situated to a private law firm for purposes of the LEOs. Va. Rules of Prof'l Conduct r. 1.10 cmt. 1a; r. 1.11 cmt. 2.

In response to Bobzien's concerns, Loftus contacted the "Ethics Hotline" of the office of the Virginia State Bar's Ethics Counsel ("Ethics Counsel"). She inquired: "is it unethical for me to be an [a]ssistant [c]ounty [a]ttorney for Fairfax County and also serve on the Fairfax City Council?" J.A. 57. Answering by letter, Ethics Counsel stated that the "short answer" is "it is not per se unethical for a lawyer to be employed in a law firm or government attorney's office and concurrently hold a public position or office." J.A. 57. Ethics Counsel then qualified his abstract answer by cautioning "lawyers that serve on public bodies will create conflicts of interest if the law firm in which the public official practices also interacts with the public body on which one of its lawyers sits." J.A. 57. The letter continued:

> LEOs 1718 and 1763 address this type of conflict and further opine that the public official's disclosure, recusal and non-participation in the matter brought by her law firm does not cure the conflict from a legal ethics standpoint while recognizing that state and local government officials' conflicts of interest laws are satisfied by those curative measures. In other words, lawyers that hold public office are held to a stricter standard than non-lawyers holding public office.

J.A. 57. Ethics Counsel concluded that "[t]his [stricter standard] is not new and has been repeatedly emphasized by the Standing Committee on Legal Ethics going back to opinions issued long before LEOs 1718 and 1763, although those opinions provide the best guidance and analyses of the issue." J.A. 57. Notwithstanding these ethical "red flags," Loftus proceeded with her candidacy -- and was elected to the City Council in May 2014.

Following his April 17 letter, Bobzien confirmed his understanding of the relevant Rules with his own inquiry to the Virginia State Bar. But unlike Loftus' "hotline"

request, Bobzien requested an informal advisory opinion from the Standing Committee. In particular, he asked the Standing Committee whether the Rules "prevent an assistant county attorney from continuing to represent a county board of supervisors upon becoming a member of the city council of a city with which the county has and will have ongoing business matters[.]" J.A. 102. In addition, he asked, if the Rules did prevent an assistant county attorney from holding those two roles, whether the Rules "also prevent the other attorneys in the county attorney's office from representing the county board in business matters with the city." J.A. 102. In response, on May 14, 2014, the Standing Committee determined Bobzien's request did not "present previously unresolved issues" and stated that "LEO 1718 and LEO 1763 are dispositive of your inquiry." J.A. 136.

Following Loftus' election to the City Council, but before she was to take office, Bobzien placed her on paid administrative leave. Bobzien again explained that if Loftus were to assume her position on the City Council it would "create[] a conflict of interest" and that such conflict "[would be] imputed to every attorney in th[e] [County Attorney's] Office" for the reasons identified by the Standing Committee and various LEOs. J.A. 61. He also stated that her continued employment would "violate [Fairfax] County's Personnel Regulation 4.16," which prohibits any County employee from holding any position that "may have the effect of reducing the efficiency of such employee." J.A. 61, 64. Nevertheless, Loftus was sworn in as a member of the City Council on June 24, 2014, in advance of the actual commencement of her term on July 1, 2014. Consequently, Bobzien terminated her employment with Fairfax County effective June 30, 2014.

7

II.

A.

Loftus filed a grievance in July 2014 challenging the grounds for her termination. Loftus' grievance first was heard internally, in the Fairfax County Attorney's Office, and she was denied reinstatement. Loftus eventually appealed her termination to the Fairfax County Civil Service Commission (the "Commission"). In March 2015, the Commission affirmed Loftus' termination, but also "suggest[ed] that [Fairfax] County determine whether there are any suitable, vacant County positions for which Ms. Loftus is qualified." J.A. 217.

In the meantime, Loftus also challenged the grievance procedures used by the Fairfax County Attorney's Office before County Executive Edward Long ("Long"). Long affirmed the procedures used by the Fairfax County Attorney's Office.

B.

After exhausting her administrative remedies, Loftus filed this action in the district court, alleging she had been terminated "solely because she had been elected to the City Council" and her termination was retaliatory, in violation of her First Amendment rights as enforced by 42 U.S.C. § 1983. J.A. 4. In addition, she alleged her termination violated Virginia Code § 15.2-1512.2 and Fairfax County Ordinance § 3-1-19, both of which secure a public employee's right to participate in certain "political activities." Loftus sought declaratory and injunctive relief, as well as $6,000,000 in damages.

8

On Bobzien's motion,[3] the district court dismissed Loftus' complaint under Rule 12(b)(6) for failure to state a claim. As to her First Amendment claim, the court ruled Loftus' termination "due to a perceived conflict of interest" did not violate her First Amendment rights and distinguished her claim from one where an employee was terminated "because she chose to run for office, because of any positions she espoused when running for office, or for being elected." J.A. 692. The district court also dismissed her state law claims, concluding neither Virginia Code § 15.2-1512.2 nor Fairfax County Ordinance § 3-1-19 created a private right of action. In addition, the court concluded that neither of those enactments actually protected the holding of a public office by a public employee.

Loftus timely appealed the district court's decision. We have jurisdiction pursuant to 28 U.S.C. § 1291.

III.

On appeal, Loftus contends the district court erred in dismissing her claims under Rule 12(b)(6). We review such dismissals de novo. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that it must "plead[] factual content that

---

[3] Both Bobzien and Long are defendants in this action. We focus our analysis only on Bobzien, however, as Loftus' claims against Long rise and fall along with her claims against Bobzien.

9

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[P]laintiffs may proceed into the litigation process only when their complaints are justified by both law and fact." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## A.

"Section 1983 imposes liability on state actors who cause the deprivation of any rights, privileges, or immunities secured by the Constitution." *Doe v. Rosa*, 795 F.3d 429, 436 (4th Cir. 2015).[4] To state a claim under § 1983 a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011).

Loftus raises what we understand to be two First Amendment arguments on appeal. First, Loftus appears to contend that she has an unfettered and inherent First Amendment right to hold public office, which was violated when Bobzien terminated her employment. In addition, Loftus posits that she prevails under *Pickering v. Board of Education*, 391 U.S. 563 (1968), when her First Amendment rights, whatever they may be, are balanced against the concerns of her employer. Loftus' arguments blend together

---

[4] We have removed all internal alterations, citations, and quotations throughout, unless otherwise noted.

10

to a degree, and, by necessity, our analysis of those arguments is duplicative in some regards.[5]

1.

Loftus initially contends the termination of her employment violated her First Amendment right to hold elected office.[6] Although we have never recognized a First Amendment right to hold elected office, we need not decide whether such a right exists to resolve this case. As a lengthy jurisprudential history makes clear, public employees who desire to hold elected office face restrictions different from those faced by non-public employees by virtue of the special trust and responsibilities of being a public employee. This is particularly true for lawyer-legislators who are public employees, as they are further bound by the ethical requirements of their profession.

Seventy years ago, the Supreme Court affirmed that a government-employer may circumscribe the rights of its employees to engage in political activity. *See United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 99 (1947). As the Court put it then, a police officer "may have a constitutional right to talk politics, but he has no constitutional right

---

[5] Bobzien contends Loftus' First Amendment claim fails because he is entitled to qualified immunity. "Qualified immunity protects [state actors] who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). We need not reach Bobzien's qualified immunity defense, however, because Loftus' First Amendment claim fails on its merits.

[6] Loftus maintains, as she must, this right exists as a constitutional entitlement wholly separate from any right she may possess under Virginia Code § 15.2-1512.2. *See Baker v. McCollan*, 443 U.S. 137, 146-47 (1979) (holding a claim under § 1983 cannot be based on a violation of state law).

11

to be a policeman." *Id.* at 99 n.34 (quoting *McAuliffe v. New Bedford*, 29 N.E. 517, 517 (Mass. 1892) (Holmes, J.)). Since that time, the Court has consistently approved various restrictions on a wide array of political activity by public employees, including running for or holding public office. *See id.* at 78 (upholding federal statute barring federal employees "from taking any active part in political management or in political campaigns"); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 606 (1973) (upholding state statute that barred public employees from, among other things, becoming "candidate[s] for nomination or election to any paid public office").

In so doing, the Court has deferred to the reasoned judgment of the legislative body or government entity charged with making determinations about the intersection of public employment and elected office. *See, e.g.*, *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 555 (1973) ("Congress and the President are responsible for an efficient public service. If, in their judgment, efficiency may be best obtained by prohibiting active participation by classified employees in politics . . . we see no constitutional objection."). For example, in *Letter Carriers*, the Supreme Court upheld a federal statute that prohibited civil service employees from "becoming . . . partisan candidate[s] for, or campaigning for, an elective public office." *Id.* at 556. Recognizing the "right to participate in political activities is [not] absolute," the Court upheld the restriction based upon four key principles: it (1) helped ensure the unbiased administration of the law, (2) avoided the appearance of impropriety, (3) preserved merit-based government employment and prevented corruption, and (4) ensured the independence of all government employees. *Id.* at 565-67.

12

Later, in *Clements v. Fashing*, the Court upheld two provisions of the Texas Constitution of similar effect to that at issue under the federal statute in *Letter Carriers*. 457 U.S. 957, 971-73 (1982). The first provision in controversy in *Clements* barred elected judicial officers from seeking election to the state's legislature during his or her term. *Id.* at 960. By operation of the second provision, any elected judicial officer who declared his or her candidacy for the legislature was automatically deemed to resign from the office then held. *Id.* The Court upheld these provisions under the same test announced in *Letter Carriers*. In particular, the Court concluded that the state's interest in the principles articulated in *Letter Carriers* was "sufficient to warrant the *de minimis* interference with [any public employee's] interest[] in candidacy." *Id.* at 971-72.

Any infringement of a public employee's First Amendment rights caused by the provisions were "de minimis," the Court reasoned, because "[t]hey limit neither political contributions nor expenditures. They do not preclude [candidates] from holding an office in a political party. [In addition, they allow candidates to] distribute campaign literature and . . . make speeches on behalf of a candidate." *Id.* at 972. Thus, because Texas' "resign-to-run" and "automatic resignation" provisions constrained any right to seek and hold elected office only in a circumscribed way they were "in reality no different than the provisions . . . upheld in [*Letter Carriers*]." *Id.*

Following the Supreme Court's lead, the courts of appeals have likewise accorded state and local governments wide latitude in regulating public employees' exercise of any First Amendment right to pursue, much less hold, elected office. *See, e.g.*, *Claussen v. Pence*, 826 F.3d 381, 387 (7th Cir. 2016) (upholding Indiana's "resign-to-run" law,

13

similar to that at issue in *Clements*); *Phillips v. City of Dallas*, 781 F.3d 772, 780-81 (5th Cir. 2015) (upholding a provision of the Dallas City Charter, which provided that any city employee who ran for partisan elected office within a county in which the city is located, or in "another county within the state, having contractual relations with the city," was automatically deemed to have resigned from his office); *Brazil-Breashears v. Bilandic*, 53 F.3d 789, 791-92 (7th Cir. 1995) (upholding an Illinois Supreme Court policy that prohibited all judicial employees from "becom[ing] a candidate for nomination, or election to, or accept[ing] appointment to any public office"); *Fletcher v. Marino*, 882 F.2d 605, 612-13 (2d Cir. 1989) (upholding a New York law prohibiting employees of local school boards from also serving on those school boards); *Wachsman v. City of Dallas*, 704 F.2d 160, 166-68 (5th Cir. 1983) (upholding a provision of the Dallas City Charter prohibiting city employees from participating in non-partisan political activities); *Otten v. Schicker*, 655 F.2d 142, 145 (8th Cir. 1981) (upholding a St. Louis Police Department rule prohibiting officers from becoming candidates for elected office).[7] These courts have uniformly upheld reasonable restrictions on the rights of public employees to participate in elective politics, including restrictions on running for non-partisan office.

Against that background, Loftus' claim must fail. Although Loftus contends her termination was in violation of the First Amendment, the Supreme Court has made clear

---

[7] This Court also has upheld such restrictions on the rights of public employees to seek public office in an unpublished opinion. *Jenkins v. Town of Bryson City*, No. 91-1054, 1991 WL 204912 (4th Cir. Oct. 11, 1991) (per curiam).

14

that public employers may permissibly bar their employees from participating in a wide array of political activities, including running for elective office. If a public employee can be prohibited from running for office, it follows all the more strongly that she also can be barred from holding elective office while remaining a public employee. In large part, the constitutional questions raised by this case are resolved by *Clements*. If the resign-to-run and automatic resignation provisions of the Texas Constitution -- which stripped certain public employees of their office upon declaring their candidacy for the state's legislature -- pass muster under the First Amendment, surely the termination of Loftus' employment only after her election to the City Council survives First Amendment scrutiny.

Loftus attempts to differentiate her situation from the principles represented in *Clements* or *Letter Carriers* in two ways. Neither has merit. First, Loftus contends this case demands a different result because she ran for City Council in a municipality different from the one that employed her. On the circumstances of this case, however, we do not believe Loftus' "different municipality" proposition carries any weight. *See Phillips*, 781 F.3d at 779 (upholding the Dallas resign to run law, which covered city employees seeking public office in any county that had a contractual relationship with the city). The principles illustrated in *Letter Carriers* and *Clements* on avoiding conflicts of interest, or even the appearance of impropriety, do not appear to require that either an actual or potential conflict of interest exist in fact in order for restrictions on political activity of public employees to apply consonant with the First Amendment. But even if

we were to assume such an actual or potential conflict were required, one exists in this case.

The record reflects multiple potential points of conflict that could face Loftus as a member of the City Council and an attorney in the Fairfax County Attorney's Office. As the LEOs from the Standing Committee illustrate, it is not simply Loftus' status as a public employee that creates a problem, but particularly her status as a lawyer for a public "law firm." That role appears to create non-waivable conflicts of interest not simply limiting Loftus under her ethical duties as a lawyer, but imposing significant burdens on her public employer.

Moreover, Loftus is unable to point to any appellate authority to suggest that, all else being equal, her employment by a different municipality should be a dispositive factor in our analysis. In fact, she can muster only two district court cases to support her position, both of which are factually inapposite and of no precedential value. *See Segars v. Fulton Cty.*, 644 F. Supp. 682 (N.D. Ga. 1986); *Hickman v. City of Dallas*, 475 F. Supp. 137 (N.D. Tex. 1979). Neither case involves an attorney representing one municipality while also running for office in another municipality to which her client potentially will be adverse in the future.

Second, Loftus argues her situation is different than that examined in *Letter Carriers* and *Clements* because the City Council is "non-partisan." But as we have already noted, any partisan/non-partisan distinction is immaterial, particularly where a potential conflict of interest exists. The evils underlying the rule in *Letter Carriers* -- "such human traits as personal ambition, greed, fear, and the like" -- are made "no less

16

harmful merely because they may be brought about by political pressures generated in a nonpartisan, rather than a partisan, political context." *Wachsman*, 704 F.2d at 167-68. As the Fifth Circuit observed:

> If Police Officer Smith is best suited for a promotion vacancy, but the promotion goes instead to Officer Jones, who is not qualified for the position, because Jones helped in the Mayor's reelection campaign by soliciting campaign contributions from the businesses and residents on his beat while Smith, whose personal preference was the Mayor's opponent, refused to do so, does it make any difference whether the campaign was partisan or nonpartisan? Will not the injuries to the efficiency of the police force and its morale, and to the rights of Officer Smith, be fully as grievous in the one case as in the other? Will not the confidence of the public be just as undermined? Have not the citizens on Officer Jones' beat been just as imposed on by being solicited by the very governmental employee to whom, day in and day out, they must look for both effective police protection and for evenhanded, reasonable enforcement of the laws regulating their own conduct?

*Id.* at 167.[8]

Thus, we find no merit to Loftus' contention that she has a First Amendment right distinguishable from those considered in *Letter Carriers* and *Clements*.

2.

In the alternative, Loftus frames Bobzien's termination of her employment as a violation of her First Amendment right to comment on matters of public concern, a right recognized by the Supreme Court in *Pickering*. Loftus thus contends we must balance

---

[8] Loftus tries to distinguish *Mitchell*, *Letter Carriers*, and the like by pointing out that, in each of those cases, the public employee's right to participate in politics was circumscribed by a valid statute or written policy. That argument does not merit much consideration. For one thing, Loftus points to no case to suggest a written policy is a constitutional requirement. Moreover, as noted above, Loftus was terminated pursuant to Fairfax County Personnel Regulation § 4.16, a written policy.

17

her interest as a citizen in commenting on matters of public concern against the interest of the County, as her employer, in promoting "efficiency of the public services it performs." *Connick v. Myers*, 461 U.S. 138, 142 (1983). That balancing, however, is of no assistance to Loftus.

Many cases, including *Letter Carriers*, discuss *Pickering* balancing, and can be explained, at least in part, by that analysis. *Letter Carriers*, 413 U.S. at 564-66; *see also Phillips*, 781 F.3d at 779-80 (concluding *Letter Carriers* supplants *Pickering* in cases involving a public employee's right to seek and hold elected office). For example, the *Letter Carriers* Court expressly relied on the *Pickering* balancing test in upholding the federal law at issue, stating: "we think the balance [Congress] has so far struck is sustainable by the obviously important interests sought to be served by the limitations on partisan political activities now contained in the [statute]." *Letter Carriers*, 413 U.S. at 564. Later, the Fifth Circuit reasoned that "the same interests that supported the federal law in *Letter Carriers*" certainly supported the constitutionality of a provision of the City of Dallas' charter, which prohibited city employees from running for any elected office. *Phillips*, 781 F.3d at 779. In light of these cases, Loftus' attempt to recast her claim under *Pickering* is dubious. But even if *Letter Carriers* does not already provide the relevant analysis for *Pickering* purposes, Loftus' First Amendment claim fails in any event.

In our application of the *Pickering* balancing test, Bobzien "bears the burden of justifying [Loftus'] discharge on legitimate grounds." *Lawson v. Union Cty. Clerk of Ct.*, 828 F.3d 239, 252 (4th Cir. 2016). To justify his decision, Bobzien need not prove

18

Loftus' election to the City Council actually caused any inefficiencies in the workplace; rather, he need only show that an adverse effect was "reasonably to be apprehended," which he did here given the potential for conflict between Fairfax City and Fairfax County. *Smith v. Gilchrist*, 749 F.3d 302, 309 (4th Cir. 2014). The *Pickering* balancing plainly favors Bobzien.

On one side of the equation is the extent to which Bobzien's decision to terminate Loftus' employment infringed on any assumed First Amendment right she might have to hold public office. We conclude any infringement was minimal, as Bobzien's decision to terminate Loftus only after she was elected to a position on the City Council regulated her speech with a limited touch, if at all. *Cf. Clements*, 457 U.S. at 972. Nowhere does Loftus plausibly allege that she was prevented from speaking on issues pertinent to her campaign or any other issues of public import. Nor does she allege she was prevented from conducting her campaign for City Council. Loftus' complaint alleges no restraint on her First Amendment rights except the fact her employment was terminated "solely because she had been elected to the City Council." J.A. 4.

On the other side of the equation is Bobzien's interest, which also is Fairfax County's interest, in the efficient operation of the Fairfax County Attorney's Office. As a general matter, the County was not required to sit idly by as one of its employee lawyers took on additional "duties or allegiances to another locality or political constituency whose interests are or could be adverse" to its own. Appellees' Response Br. 28. The possibility that Loftus' duties as a member of the City Council would conflict with her duties as an assistant county attorney was more than mere speculation, given the history

19

and reality of the relationship between the two municipalities. Because Loftus' membership on the City Council potentially was inconsistent with her position as an assistant county attorney, Bobzien reasonably apprehended serious inefficiencies arising from that arrangement.

In particular, Bobzien believed that Loftus' membership on the City Council and position as an assistant county attorney would create a far-reaching and intractable conflict of interest, not only for Loftus but also for the entire Fairfax County Attorney's Office. Prior to terminating Loftus' employment, Bobzien contacted the Standing Committee, which pointed him to LEOs 1718 and 1763. Both of those LEOs strongly suggested that Loftus' continued employment as an assistant county attorney and her membership on the City Council would create an incurable conflict of interest, one which would prohibit any attorney in the Fairfax County Attorney's Office from representing the County in matters, adverse or otherwise, with the City.

Loftus' own correspondence with Ethics Counsel confirms the reasonableness of Bobzien's position. As Ethics Counsel advised Loftus: "lawyers that serve on public bodies will create conflicts of interest if the law firm in which the public official practices also *interacts with the public body on which one of its lawyers sits*." J.A. 57 (emphasis added). Loftus knew the Fairfax County Attorney's Office interacted with the City Council in numerous matters, including contract negotiations. Moreover, Loftus also knew "[her] disclosure, recusal and non-participation in the matter brought by her law firm [would] not cure the conflict from a legal ethics standpoint" because "lawyers that hold public office are held to a stricter standard than non-lawyers holding public office."

20

J.A. 57. Under any applicable *Pickering* balancing, the intransient difficulties created by Loftus' service as a lawyer-legislator balance heavily in favor of her public employer.[9]

Accordingly, Loftus' termination of employment did not violate the First Amendment, and, therefore, her § 1983 claim was properly dismissed by the district court.

B.

In addition to her First Amendment claim, Loftus contends Bobzien's decision to terminate her employment also violated her rights secured by Virginia Code § 15.2-1512.2 and Fairfax County Ordinance § 3-1-19. We disagree.

1.

Loftus first argues section 15.2-1512.2 gives her an absolute right to hold public office as a public employee. That statute provides, "no locality shall prohibit an employee of the locality . . . from participating in political activities while . . . off duty, out of uniform and not on the premises of [her] employment with the locality." Va. Code Ann. § 15.2-1512.2(B). The term "political activities":

> includes, but is not limited to, voting; registering to vote; soliciting votes or endorsements on behalf of a political candidate or political campaign; expressing opinions, privately or publicly, on political subjects and candidates; displaying a political picture, sign, sticker, badge, or button; participating in the activities of, or contributing financially to, a political party, candidate, or campaign or an organization that supports a political candidate or campaign; attending or participating in a political convention,

_____

[9] Loftus also argues Bobzien's decision to terminate her employment violates the First Amendment because he did not employ the "least restrictive means." In effect, Loftus argues that Bobzien should have found her additional or alternative employment. But she points to no constitutional basis for her argument, and we are aware of none.

caucus, rally, or other political gathering; initiating, circulating, or signing a political petition; engaging in fund-raising activities for any political party, candidate, or campaign; acting as a recorder, watcher, challenger, or similar officer at the polls on behalf of a political party, candidate, or campaign; or becoming a political candidate.

*Id.* § 15.2-1512.2(C). The statute includes no express private cause of action and does not mention the holding of elective office as a protected state law right.

Loftus' state law claim fails for two reasons.[10] First, under its plain terms, section 15.2-1512.2 does not create any private right of action. As a federal court, we lack the authority to create a right under a state statute where the state's legislature has elected not to include that right. *See A&E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 674 (4th Cir. 1986) (holding "federal courts should be reluctant to read private rights of action into state laws where state courts and state legislatures have not done so"). Absent "clear and specific evidence of legislative intent," if a federal court creates a private right of action in a state law it "abrogates both the prerogatives of the political branches and the obvious authority of states to sculpt the content of state law." *Id.* Thus, because the Virginia General Assembly has chosen not to provide a private cause of action in the statute, Loftus' section 15.2-1512.2 claim must fail.

Even if we could imply a private right of action, however, Loftus' argument -- that section 15.2-1512.2 protects the right to hold office -- is inconsistent with the text of the statute. Loftus admits section 15.2-1512.2 does not specifically create a right to hold office. Nevertheless, she posits that the statute's is-not-limited-to language must include

---

[10] Loftus points us to no Virginia authority to support her argument and we have found none.

22

such a right because otherwise it "would render Virginia['s] right to participate law and similar laws meaningless, as it would only cover a few weeks of political activity and not the result of the election." Appellant's Opening Br. 29.

Loftus' argument fails as it asks us to expand the terms of the statute beyond what its text allows. When interpreting a statute, we must apply its plain meaning, "unless the terms are ambiguous or applying the plain language would lead to an absurd result." *JSR Mech., Inc. v. Aireco Supply, Inc.*, 786 S.E.2d 144, 146 (Va. 2016). Where, as here, a statute includes both general words -- "not limited to" -- and specific words -- voting, registering to vote, and the like -- the meaning of the doubtful words in the statute "may be determined by reference to their association with related words and phrases." *Andrews v. Ring*, 585 S.E.2d 780, 784 (Va. 2003).

Through its expansive list of "political activities," section 15.2-1512.2 protects a wide array of conduct by Virginia public employees. Upon closer inspection, however, each example falls into one of two categories: political organization or political campaign participation. Neither category is so broad as to include the acts of assuming elected office and governing, a fundamentally different function than campaigning for office. "If a municipality cannot prohibit its employees from holding political office, as Loftus claims, a county would be helpless to prevent even the most glaring conflicts of interest and to ensure public confidence in government." Appellees' Response Br. 48.

Therefore, the district court did not err in dismissing Loftus' state law claim under section 15.2-1512.2.[11]

2.

Loftus also contends Fairfax County Ordinance § 3-1-19 gives her a right similar to that for which she argues under section 15.2-1512.2. The ordinance protects the right of County employees to participate in "political activities," a term that is defined by reference to section 15.2-1512.2. Fairfax Cty., Va., Code § 3-1-19(b). The ordinance does not establish a private cause of action. Rather, it adopts a right to a grievance proceeding before the Commission.

Loftus' claim fails because the ordinance does not establish a private right of action. "When a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." *Vansant & Gusler, Inc. v. Washington*, 429 S.E.2d 31, 33 (Va. 1993). Because the ordinance provides exclusively for a grievance procedure, we cannot infer a private right of action where the legislative body has declined to do so.

---

[11] Loftus tries to save her state law claim by recasting it as one for wrongful discharge in violation of public policy, a claim recognized by the Supreme Court of Virginia in *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). But Loftus failed to plead such a claim in her complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing a complaint must, at a minimum, give the defendant "fair notice" of the claims against him).

Even if Loftus had properly pleaded a *Bowman* claim, however, it would fail on the merits. A successful *Bowman* claim requires violation of a public policy established by statute. *See Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 918 (Va. 1987). As noted above, the only basis for Loftus' state law claim is section 15.2-1512.2, which we have already determined gives her no right to proceed.

In any event, because the ordinance is substantively identical to section 15.2-1512.2, Loftus' claim would also fail on the merits for the reasons discussed above regarding her statutory claim. Accordingly, the district court did not err in dismissing Loftus' claim based on Fairfax County Ordinance § 3-1-19.

IV.

For all the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

25