**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1067**

JACQUELINE DAWN STEPP,

             Plaintiff - Appellant,

       v.

U.S. BANK TRUST NATIONAL ASSOCIATION; ALG TRUSTEE, LLC,

             Defendants - Appellees,

Appeal from the United States District Court for the Western District of Virginia at Harrisonburg.  Elizabeth Kay Dillon, District Judge.  (5:18-cv-00052-EKD-JCH)

Submitted:  March 17, 2020                          Decided:  April 20, 2020

Before KEENAN, WYNN, and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Judge Keenan and Judge Wynn joined.

Henry W. McLaughlin, III, LAW OFFICE OF HENRY MCLAUGHLIN, P.C., Richmond, Virginia, for Appellant.  Thomas J. Cunningham, West Palm Beach, Florida, Tara L. Trifon, Hartford, Connecticut, Hugh S. Balsam, LOCKE LORD LLP, Chicago, Illinois; Jason S. Murphy, ORLANS PC, Leesburg, Virginia, for Appellees.

PAMELA HARRIS, Circuit Judge:

This appeal arises from a dispute over whether a bank was required to conduct a face-to-face meeting with a mortgage borrower before initiating foreclosure proceedings. Federal regulations generally call for such a meeting, but there is an exception for cases in which a mortgage lender does not have a branch office within 200 miles of the borrower's home. The question here is whether a bank office that conducts no mortgage-related business qualifies as a "branch office" of a "mortgagee" under the regulatory exception. Like the district court, we think it does not, and so we affirm the district court's judgment.

## I.

Jacqueline Stepp obtained a mortgage to purchase a home in Page County, Virginia. The mortgage note was assigned to U.S. Bank Trust National Association, which has remained the noteholder. When Stepp fell more than three months behind on her mortgage payments, U.S. Bank instructed ALG Trustee, LLC, to foreclose on her home, and ALG commenced foreclosure proceedings.

Stepp filed a complaint in federal court against U.S. Bank and ALG, seeking damages and rescission of the foreclosure. According to Stepp, U.S. Bank improperly initiated foreclosure without first offering her a face-to-face meeting, as required by regulations promulgated by the Department of Housing and Urban Development ("HUD") and incorporated into Stepp's deed of trust. *See* 24 C.F.R. § 203.604(b). U.S. Bank and ALG moved to dismiss the complaint, arguing that U.S. Bank was exempt from the face-to-face meeting requirement under 24 C.F.R. § 203.604(c)(2), which excuses the meeting

2

when the "mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either." Because U.S. Bank's Richmond office – the only one within 200 miles of Stepp's home – conducted no mortgage-related business and was not open to the public, U.S. Bank contended, it did not qualify as a "branch office" of a "mortgagee," and so the exception applied.

The district court agreed with U.S. Bank and dismissed Stepp's complaint. *See Stepp v. U.S. Bank Nat'l Ass'n*, No. 5:18-CV-00052, 2018 WL 6625081 (W.D. Va. Dec. 18, 2018). In ruling on the motions to dismiss, the district court properly credited the factual allegations in Stepp's complaint, as well as Stepp's admissions, assuming that U.S. Bank had not offered a face-to-face meeting with Stepp prior to foreclosing; that its Richmond office is within 200 miles of Stepp's house; and – critically – that the Richmond office, which handles constructive trusts, does not provide mortgage origination or mortgage servicing and is not open to the public. *See id.* at *7–8. Under those circumstances, the court concluded, U.S. Bank's Richmond office was not a mortgagee's "branch office" within the meaning of 24 C.F.R. § 203.604(c)(2).

Instead, the court held, the "proper interpretation of a 'mortgagee's branch office' is one where some business *related to mortgages* is conducted." *Id.* at *8. Stepp's broader reading, the court reasoned, would make *any* office of a corporate entity like U.S. Bank, which offers a whole variety of financial services, into a "branch office" of a "mortgagee" for purposes of the face-to-face meeting requirement. "But where – as here – the location's business is completely unrelated to mortgaging functions and also where – as here – the

3

office provides no public access, it defies common sense to conclude that it can constitute a 'branch office' for purposes of this regulation." *Id.*

That understanding of § 203.604(c)(2), the court went on, was consistent with the Supreme Court of Virginia's decision in *Mathews v. PHH Mortgage Corp.*, 724 S.E.2d 196 (Va. 2012), on which Stepp chiefly relied. In that case, the state supreme court rejected the position that a "branch office" of a "mortgagee" should be limited to offices engaged in mortgage loan servicing, as opposed to mortgage loan origination; instead, "branch office" covered "every type of business and service supplied by the mortgagee." *Id.* at 204. That definition, the district court explained, "makes sense where the office under consideration was still part of the mortgage business. But it makes little sense here, where the purported 'branch office' does not offer *any* services related to mortgages . . . ." *Stepp*, 2018 WL 6625081, at *7.

Finally, the court noted, its reading of a § 203.604(c)(2) "branch office" aligned with the functional approach taken to defining "branch office" under a different banking statute. *Id.* at *8 (discussing *Cades v. H & R Block, Inc.*, 43 F.3d 869 (4th Cir. 1994)). It also was supported by the recent decision in *Peralta v. U.S. Bank*, No. 17-cv-263, 2018 WL 2971119, at *1–2 (D.R.I. April 17, 2018), holding that a bank office that does not originate, underwrite, or service mortgage loans is not the "branch office" of a "mortgagee" under the regulation – while Stepp was unable to identify any case adopting her broader reading. *See Stepp*, 2018 WL 6625081, at *8.

Stepp timely appealed the dismissal of her complaint.

4

## II.

We review de novo the district court's dismissal for failure to state a claim, *see Loftus v. Bobzien*, 848 F.3d 278, 284 (4th Cir. 2017), and need address only one question: Does a bank office qualify as a "branch office" of a "mortgagee" under 24 C.F.R. § 203.604(c)(2) if it does not conduct any mortgage-related business?[1]  Like the district court, we conclude that it does not.

As the district court explained, the regulations generally require that a mortgagee "must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid," and in any event, "at least 30 days before foreclosure is commenced."  *See* 24 C.F.R. § 203.604(b).  But there are exceptions, and the one that is relevant here applies when "[t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either."  *Id.* at § 203.604(c)(2).  So whether U.S. Bank may avail itself of that exception – or, conversely, whether it was subject to the face-to-face meeting requirement – turns on whether its Richmond office, less than 200 miles from Stepp's house, is a "mortgagee['s] . . . branch office" within the meaning of § 203.604(c)(2).

We do not think the text of § 203.604(c)(2) can be read to encompass an office at which no mortgage-related business is conducted.  It may be, as Stepp argues, that standing

---

[1] U.S. Bank and ALG have not cross-appealed or otherwise questioned the district court's threshold determination that Stepp, who declared bankruptcy after the foreclosure at issue, regained the right to pursue her civil claim on her own behalf when the bankruptcy trustee abandoned any interest in that claim.  *See Stepp*, 2018 WL 6625081, at *6.

alone, the term "branch office" could be read to include any office at which a corporate entity like U.S. Bank does business of any kind. But "branch office" does not stand alone. *See Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017) (citation omitted) (words of a statute are construed in "context," not "in isolation"). Under § 203.604(c)(2), the question is whether U.S. Bank's Richmond office, devoted exclusively to the management of constructive trusts, is a "branch office of" a "*mortgagee*," 24 C.F.R. § 203.604(c)(2) (emphasis added), for purposes of a regulation governing face-to-face meetings between *mortgage* lenders and their borrowers. In that context, we think it clear that what is contemplated, at a minimum, is an office at which some business related to *mortgages* is done.

That reading also is fully consistent with the purpose of the regulatory scheme. The face-to-face meeting regulation was promulgated under 12 U.S.C. § 1715u(a), which requires mortgagees holding federally insured loans, such as Stepp's, to "engage in loss mitigation actions" in order to "provid[e] an alternative to foreclosure."[2] The regulation advances that statutory objective by making in-person meetings available, where reasonably feasible, to facilitate the discussion of loss-mitigation options. But an office that does no mortgage-related business at all, even if within 200 miles of a mortgagor's

---

[2] The general authorization for the relevant HUD regulations appears at 12 U.S.C. § 1715b, enabling HUD to promulgate regulations to carry out the insured loan program. HUD issued the face-to-face meeting regulation under both 12 U.S.C. 1715b and 12 U.S.C. § 1715u(a). *See* Single Family Mortgage Insurance on Indian Reservations and Other Restricted Lands, 51 Fed. Reg. 21866, 21871 (June 16, 1986); *see also Mathews*, 724 S.E.2d at 205 n.6.

6

home, will be poorly positioned to discuss the mortgage-specific loss-mitigation options outlined by statute, "such as special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure." *See* 12 U.S.C. § 1715u(a).

Like the district court, we see no inconsistency between our construction of § 203.604(c)(2) and that of the Supreme Court of Virginia in *Mathews*. As described above, the *Mathews* court rejected a narrower reading of "branch office" – based on a since-deleted "frequently asked questions" section of the Department of Housing and Urban Development website – that would have confined that term to offices in which mortgagees service, rather than originate, mortgage loans. *See Stepp*, 2018 WL 6625081, at *7 & n.9; *Mathews*, 724 S.E.2d at 203–05. Instead, the court concluded, the term "branch office" of a "mortgagee" unambiguously includes an office engaged in mortgage origination, as well as mortgage servicing; either way, the office is the location of "business and service[s] supplied by the mortgagee." *Mathews*, 724 S.E.2d at 204. Nothing about that holding – under which the provision of *some* form of mortgage-related service is the key to § 203.604(c)(2)'s application – conflicts with our determination that an office that conducts *no* mortgage-related business does not qualify as a § 203.604(c)(2) "branch office." Nor has Stepp identified any other case adopting her contrary view and finding that an office engaged solely in *non*-mortgage-related business constitutes a "branch office" of a "mortgagee" for purposes of the face-to-face meeting requirement.

Finally, defining a mortgagee's "branch office" as one that conducts mortgage-related business is broadly consistent with the functional approach taken in other banking

7

statutes to the "branch office" question. *See Stepp*, 2018 WL 6625081, *8. In *Cades v. H & R Block, Inc.*, for instance, we considered 12 U.S.C. § 36, which governs "branch banks," and recognized that an office will not qualify unless it transacts "branch business by accepting deposits, paying checks, or lending money." 43 F.3d at 874; *see also* 12 U.S.C. § 36(j) (defining "branch" to include any "branch office" at which "deposits are received, or checks paid, or money lent"). Here, of course, we are dealing with a different regulation, and neither the regulation nor the statute under which it was promulgated provides a definition of "branch office." But we agree with the district court that applying the same functional analysis to § 203.604(c)(2) produces a "common sense" definition of "branch office" consistent with the regulatory text and purpose. *See Stepp*, 2018 WL 6625081, *8.

**III**.

We affirm the district court's judgment granting the defendants' motions to dismiss.

*AFFIRMED*